[Civil No. 2890. Filed November 4, 1929.]

[281 Pac. 944.]

In the Matter of the Application of LORENZO WRIGHT for Writ of Habeas Corpus.

Messrs. Flanigan & Fields, for Relator.

Messrs. Struckmeyer & Jennings, for Respondent.

ROSS, J.—Lorenzo Wright, superintendent of the state prison at Florence, was found guilty of contempt of the superior court of Maricopa county for permitting to run at large one William Brown, who had been theretofore convicted in said court of the crime of robbery and sentenced to serve from five to six years in the state prison, the term of said imprisonment not having expired and he not being otherwise legally entitled to his liberty. He was fined $1,000, or to serve six months in the county jail in default of payment. He has applied to this court for admission to bail pending the determination of his right to appeal from such contempt judgment. Upon the hearing of said application and pending the determination of the question we ordered the petitioner admitted to bail in the sum of $2,000, and allowed the parties five days in which to file their memoranda of authorities. These are now on file, and the case is ready for disposition.

The merits of the case cannot be gone into in this proceeding. That, if at all, will have to be done by a different form of writ. The sole question now for decision is, as above indicated, the right of appeal.

In two very recent cases we have had occasion to consider contempt charges against a predecessor of petitioner as superintendent of the state prison. In *Howard* v. *State*, 28 Ariz. 433, 40 A. L. R. 1275, 237 Pac. 203, 204, decided in June, 1925, we had this to say of his powers and duties as also his amenability to the courts for his official conduct:

"When, therefore, the superintendent of the prison receives the commitment, which is his only authority for detaining any man within that prison, he may only do what that commitment orders him, to wit, 'receive and safely keep' the defendant for the time specified therein. If, without legal justification, he

does more than is necessary to so safely keep him, he is violating the law just as much as he is in releasing him before the expiration of his minimum term of sentence unless he has been legally pardoned. On the other hand, he not only may but must do what is necessary to 'safely keep' the prisoner. If, for example, a prisoner attempts to escape from the mild confinement now prescribed by our law, and to our personal knowledge generally enforced by our prison authorities, it is highly proper that such stricter confinement be imposed as may be necessary to hold him. . . .

"The superintendent of the state prison is *ex officio* an officer of each superior court of the state for the purpose of carrying out its proper sentences, and is subject to attachment for contempt if he departs therefrom, either on the side of excessive leniency or severity, without legal excuse therefor."

In *State* v. *Superior Court,* 30 Ariz. 332, 47 A. L. R. 401, 246 Pac. 1033, 1036, decided in June, 1926, this court affirmed a judgment of conviction of the superintendent who had been found guilty of contempt of the superior court in releasing a prisoner on the recommendation of the board of pardons and paroles, it appearing that the recommendation was premature, the prisoner not having served his minimum sentence. We said:

"The superintendent's duty was to observe and enforce the court's mandate, and, when he violated its terms by releasing the prisoner before the minimum sentence was served, his act was contemptuous."

In neither of these cases was the procedural question here raised involved.

The answer to the problem we have to solve depends upon the construction of our statutes on contempt. Those statutes, which we shall presently quote, for procedural purposes divide contempts into two classes. In one class the accused is entitled to a jury trial and has the right of appeal, and pending appeal is entitled to bail. In the other class he is not

entitled to a jury trial and is not granted the right of appeal. The applicable statute to contempts of the former class is section 4471, Revised Code of 1928, reading:

"Any person who shall wilfully disobey any lawful writ, process, order or judgment of a superior court of this state, by doing any act thereby forbidden to be done, if the act done by him also constitute a criminal offense, shall be proceeded against for his contempt as herein provided."

If the contempt is of the kind described in the above section, the procedure is set out in sections 4472 and 4473. An appeal as in criminal cases may be taken, which stays the execution of the judgment, and the accused is entitled to bail.

The contempts of the other class are those mentioned in section 4474, Id., reading as follows:

"Contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, and contempts committed by the failure to obey any lawful writ, process, order, (or) judgment of the court, and all other contempts not specifically embraced within this chapter may be punished in conformity to the practice and usage of the common law."

Into which one of these classes does the present case fall? It is the contention of the relator that it falls within the first class, whereas the opposition asserts that it falls within the second.

If it was intended by sections 4471, 4472 and 4473 that an accused in any and all cases in which his contemptuous conduct is also a criminal offense should be given a jury trial on demand and an appeal upon conviction, plainly the present facts sustain the relator's contention. The act of which relator is charged, to wit, wilful disobedience of a court order or judgment, is defined as a misdemeanor by section 4572, Revised Code of 1928. Also, if relator negli-

gently or voluntarily permitted the prisoner to escape from custody, the same act would constitute a criminal offense under section 4540, Id. The failure to obey the judgment and sentence of conviction of prisoner Brown, aside from being a contempt of the court rendering such judgment and sentence, was certainly a misdemeanor and probably also the more serious offense of escape. *Swepston* v. *United States,* 251 Fed. 205, 210, 163 C. C. A. 361; *United States* v. *Hoffman,* (D. C.) 13 Fed. (2d) 269, affirmed on appeal, (C. C. A.) at page 278 of 13 Fed. (2d). But, as we understand section 4471, before the accused can invoke its procedure it must not only appear that his act is a criminal offense, but also that his act must consist in doing something *forbidden* by "lawful writ, process, order or judgment." The commitment under which relator held Brown in custody did not *forbid* the relator from extending to him freedom of restraint and imprisonment; the commitment was mandatory in its language, that is, it directed the superintendent of the state prison "to receive and safely keep" Brown until he was legally discharged. We cannot bring ourselves to think that the legislature intended that an officer of the court who had failed or refused to execute a lawful writ, process, order or judgment of such court, commanding or directing him to do something, could, when "called on the carpet" for such failure or refusal, demand a jury trial and bail. Such disobediences were evidently intended to be covered and taken care of by section 4474.

We cannot think of any criminal case in which a prohibitive process, writ, order or judgment would issue or be entered. Courts of equity never prohibit or forbid parties from committing crime; they do sometimes forbid or prohibit parties from destroying, injuring or interfering with property and property rights and thereby incidentally forbid and prohibit the commission of crime, but the latter feature is only

incidental, the main purpose of the writ, process, order or judgment being to preserve property rights. *City of Bisbee* v. *Arizona Ins. Agency,* 14 Ariz. 313, 127 Pac. 722; 32 C. J. 275, §§ 436–443, inclusive. With the one exception, so far as we can think, prohibitive writs, processes, orders and judgments forbidding the doing of any act or thing issue only in civil cases and to prevent civil wrongs. The commitment or judgment for the violation of whose mandate the relator is charged issued out of a criminal cause, to wit, *State of Arizona* v. *William Brown.* It is a mandatory process imposing upon the superintendent of the state prison the duty of safely keeping the prisoner until he is legally discharged.

Cases falling within section 4474, and we are convinced that this one does, must be governed by the "practice and usage of the common law." According to such practice and usage the contemnor is not entitled to a jury trial nor to an appeal or to bail. *Van Dyke* v. *Superior Court,* 24 Ariz. 508, 211 Pac. 576.

These statutory provisions of ours classifying and regulating the procedure in certain specified contempts were passed by our legislature originally in 1913. Paragraphs 1798 to 1804, inclusive, Rev. Stats. Ariz. 1913. It is generally understood that they were copies of what is commonly known as the Clayton Act, at that time pending in Congress but not enacted as a federal law until October 15th, 1914. Chapter 323, 38 Stats. at Large, 738, 739, §§ 21, 22; Comp. Stats., §§ 1245a, 1245b; 6 Fed. Stats. Ann., 2d ed., pp. 141, 142 (28 U. S. C. A., §§ 386, 387). There were verbal differences from the congressional act to meet local conditions, but otherwise our statute as originally passed was the same as the Clayton Act. In the Revised Code of 1928 there were some changes made, but, in so far as the question we have to de-

cide is concerned, the statutes remain the same, so far as we can see.

The feature of the Clayton Act here involved has been before the federal courts and there construed, as we believe, in harmony with our views. Indeed the case cited by relator as sustaining his contention, it seems to us, is against him. The case is *Michaelson* v. *United States,* 266 U. S. 42, 69 L. Ed. 162, 35 A. L. R. 451, 45 Sup. Ct. Rep. 18, 20. The material facts were that Michaelson and his co-defendants, employees of the Chicago, St. Paul, Minneapolis & Omaha Railway, were enjoined from combining and conspiring to interfere with interstate commerce by picketing and the use of force and violence. In a proceeding charging them with contempt for violating the injunction they applied for a jury trial, which was denied them. The court heard the case and adjudged them guilty. Among other questions presented to the Supreme Court was whether under the facts they were entitled to have a jury trial in the contempt proceeding. The Supreme Court answered this in the affirmative. Because of the language used by the court in arriving at its conclusion, we are not entirely surprised that relator should claim that the case supports his view. It will be noticed, however, that the contempt charged consisted of the violation by the accused of a decree *forbidding* them from doing certain things therein enumerated. The court, speaking of the power of Congress to regulate contempt proceedings, said:

"It (the statute) is of narrow scope, dealing with the single class where the act or thing constituting the contempt is also a crime in the ordinary sense. It does not interfere with the power to deal summarily with contempts committed in the presence of the court or so near thereto as to obstruct the administration of justice, and is in express terms carefully limited to the cases of contempt specifically defined. Neither do we think it purports to reach

cases of failure or refusal *to comply affirmatively* with a decree—that is to do something which a decree commands—which may be enforced by coercive means or remedied by purely compensatory relief." (Italics ours.)

Any doubt that might be entertained as to the cases in which the accused is entitled to a jury trial under the Clayton Act is, we think, entirely removed by what the same court said 'in *United States* v. *Goldman,* 277 U. S. 229, 72 L. Ed. 862, 48 Sup. Ct. Rep. 486, construing the opinion in the Michaelson case, reading at page 238 of the United States Report, 72 L. Ed. 862, 48 Sup. Ct. Rep. 488, where it is said:

"The act, as stated in *Michaelson* v. *United States, supra,* 66 (45 Sup. Ct. Rep. 20), is 'of narrow scope,' and 'carefully limited to the cases of contempt specifically defined.'

"Section 21 [our 4471] relates only to the prosecution for the disobedience of orders, decrees, etc., by doing any *forbidden* act which is of such character as to constitute also a criminal offense under a Federal statute or State law." (Italics ours.)

In *Swepston* v. *United States, supra,* the sheriff and his deputy were the custodians and keepers of the county jail, and into their care and keeping had been committed a prisoner. They were charged in a contempt proceeding with having connived at and assisted the prisoner to escape from jail and to be at large beyond the confines of said jail. The accused claimed that they were entitled to a jury trial. In passing upon that claim the court said:

"Reliance in this behalf is placed on Act Oct. 15, 1914 (38 Stat., pt. 1, pp. 730, 738, §§ 21 and 22, Comp. St. 1916, §§ 1245a, 1245b [28 U. S. C. A., §§ 386, 387]), known as the Clayton Act. It is enough to say of this (1) that no demand for a jury was made, and (2) that section 24 of the act expressly excepts from its operation proceedings of the kind here involved. Section 24 provides:

" 'That nothing herein contained shall be construed to relate to contempts committed . . . in disobedience of any lawful . . . order . . . entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States, but the same, and other cases of contempt not specifically embraced within section 21 of this act, may be punished in conformity to the usages at law and in equity now prevailing.' Comp. St. 1916, § 1245d [28 U. S. C. A., § 389].

"The complete answer, then, to the latter contention, is the fact that the order which the contemnors are found to have violated was entered in the case of *United States* v. *Dye*."

So, the contemnor here violated the order or judgment "of the court" in the case of *State of Arizona* v. *William Brown*.

The contempt with which the relator is charged is not of the kind described in section 4471, and he is not therefore entitled to appeal from the judgment. The facts of his case bring it within the provisions of section 4474 and it is governed by the practice and usage of the common law as therein provided.

The order will be that relator surrender himself back into the custody of the sheriff of Maricopa county forthwith, and that upon such surrender his bail pending this proceeding be exonerated.

LOCKWOOD, C. J., and McALISTER, J., concur.