542 P.2d 1124

**STATE of Arizona, Petitioner,**
**Harold J. Cardwell, Warden,**
**Real Party in Interest,**

v.

**Hon. Anthony T. DEDDENS, Judge of the Superior Court of the State of Arizona in and for the County of Cochise, Respondent,**

and

**Robert MacDonald, Intervenor.**

**No. 11885–P.R.**

Supreme Court of Arizona,
In Banc.

Nov. 25, 1975.

Bruce E. Babbitt, Atty. Gen., by Frank T. Galati, Asst. Atty. Gen., Phoenix, for petitioner.

Richard J. Riley, Cochise County Atty., by Beverly H. Jenney, Deputy County Atty., Bisbee, for respondent.

Verity & Smith by Bruce F. Rinaldi, Tucson, for intervenor.

STRUCKMEYER, Vice Chief Justice.

The State of Arizona, through the Attorney General, filed an original petition for special action in the Court of Appeals, requesting that the Superior Court of Cochise County be directed to vacate an order holding the Warden of the Arizona State Prison in contempt. Robert MacDonald, an inmate in the state prison intervened. The Court of Appeals, without an opinion, denied any relief and a petition for review was filed by MacDonald. We took jurisdiction to set at rest the constitutional issue raised by petitioner. Petitioner's prayer for relief is denied.

The facts are not in dispute. Robert MacDonald was convicted in the Superior Court of Cochise County, Arizona, before Anthony T. Deddens, Judge thereof, hereinafter called respondent court, for selling marijuana in violation of A.R.S. § 36–1002.07. On January 22, 1973, he was sentenced to five to seven years in prison. Thereafter, his conviction was affirmed. State v. MacDonald, 110 Ariz. 152, 515 P. 2d 1172 (1973). Following the imposition of sentence, MacDonald was incarcerated in the Arizona State Prison, where he remained until, on or about July 4, 1974, he was released on parole.

At the time MacDonald was sentenced, the Board of Pardons and Paroles was following an Attorney General Opinion (No. 63–65) to the effect that the good behavior deduction of A.R.S. § 31–251 and the double time deduction of A.R.S. § 31–252 should be used in computing the statutory minimum for a conviction under A.R.S. §§ 36–1002 through 36–1002.08. Thereafter, and while MacDonald was in prison, the Attorney General issued his Opinion No. 73–13, which disapproved of Opinion No. 63–35 and stated that those credits could not be used in computing the statutory minimum for a conviction under A.R.S. §§ 36–1002 through 36–1002.08. Under Opinion No. 73–13, a person convicted of violating A.R.S. § 36–1002.07 would be required to serve three years in prison before he would be eligible for parole. However, in a letter dated October 17, 1973, the Attorney General advised the Department of Corrections that Opinion No. 73–13 should be applied prospectively only. Pursuant to this advice, MacDonald was released after having served only 18 months in prison.

The Cochise County Attorney filed a writ of mandamus in superior court, challenging the legality of MacDonald's release. It was bottomed on the language of A.R.S. § 36–1002.07, which reads:

"A. Every person who * * * sells * * * any marijuana shall be punished by imprisonment in the state prison from five years to life and shall not be eligible for release upon completion of sentence, or on parole, or on any other

basis until he has served not less than three years."

Following a hearing held October 16, 1974, respondent court held Harold J. Cardwell, Warden of the State Prison, in contempt for releasing MacDonald. Imposition of sentence was suspended if Cardwell purged himself of contempt by returning Mac-Donald to custody.

Cardwell did purge himself of contempt by returning MacDonald to custody, and therefore there is no issue presented as to the jurisdiction of the lower court to find Cardwell in contempt in a procedure which originated in mandamus.

■■■ The Attorney General filed this special action in the Court of Appeals, contending that Cardwell acted properly in releasing MacDonald because his Opinion 73–13 could not be retroactively applied to MacDonald. In addition, he argues that since the Warden released MacDonald in the exercise of a good faith reliance upon legal advice, it was error to hold him in contempt. We hold that this latter argument is totally without merit.

The Warden's duty is set out in A.R.S. § 31–201.01, as follows:

"A. The superintendent shall hold in custody all persons sentenced to the state prison under the law and shall hold such persons for the term directed by the court or for such other period of time as may be ordered by the board of pardons and paroles, subject to law."

Previously, contempt charges have been upheld under circumstances similar to the instant case. *State v. Superior Court*, 30 Ariz. 332, 246 P. 1033 (1926); *In re Wright*, 36 Ariz. 8, 281 P. 944 (1929). We said, for example in *State v. Superior Court, supra:*

"The superintendent's duty was to observe and enforce the court's mandate, and, when he violated its terms by releasing the prisoner before the minimum sentence was served, his act was contemptuous. The order of release had no sanction in law, and was not a justifica-

tion, though in following it the superintendent of the prison was undoubtedly obeying the law as he understood it, and was in no sense guilty of any intentional violation of it. He was merely following the construction placed upon it by the Governor, the board of pardons and paroles, and himself, since the policy of paroling prisoners had become a part of the statutes of the state. But the motives of the board of pardons and paroles, however beneficent and well intentioned, in ordering or recommending the prisoner's release could not supplant the plain letter of the law.

It is for the Legislature to say when the power of paroling prisoners may be exercised, and it is the duty of the courts and those ministerial officers charged with executing their mandates to follow the law as it is written, and not as they may think it should be written." 30 Ariz. at 340, 246 P. at 1036.

The Warden of the State Prison cannot avoid contempt of court merely because he believes he was obeying the law as he understood it.

■■ MacDonald urges that the law in force at the time of his conviction was the Attorney General Opinion No. 63–35. We reject this idea. The Attorney General's opinions are advisory only and are not binding on courts of law. They are not a legal determination of what the law is at any certain time.

The Attorney General agrees that since the publication of his Opinion No. 73–13, Opinion No. 63–35 is no longer applicable, but MacDonald contends that Opinion No. 73–13 misinterprets the manner in which the mandatory minimum sentences provided in A.R.S. §§ 36–1002 through 36–1002.08 are to be calculated. He urges that Opinion No. 63–35 was not only the law when he was convicted, but should be given continued vitality.

In Opinion No. 63–35, the Attorney General compared the punishment provisions of A.R.S. §§ 36–1002 through 36–1002.08

and found that there was "little difference in the meaning except that the provisions of A.R.S. §§ 36–1002 through 36–1002.08 are more wordy." He concluded that the credits provided for in A.R.S. §§ 31–251 and 31–252 were available to one convicted under A.R.S. §§ 36–1002 through 36–1002.-08, notwithstanding the expressed statutory restrictions on release.

■■■ In determining the proper construction to be given to a statute we look to the intent of the legislature. *Arnold Const. Co., Inc. v. Arizona Board of Regents,* 109 Ariz. 495, 512 P.2d 1229 (1973). This Court will consider the context of the statute, the language used, the subject matter, the effects and consequences, and the spirit and purpose of the law. *Sellinger v. Freeway Mobile Home Sales, Inc.,* 110 Ariz. 573, 521 P.2d 1119 (1974). Statutes are to be given, whenever possible, such an effect that no clause, sentence or word is rendered superfluous, void, contradictory or insignificant. *State v. Cassius,* 110 Ariz. 485, 520 P.2d 1109 (1974); *State v. Edwards,* 103 Ariz. 487, 446 P.2d 1 (1968). The interpretation of A.R.S. §§ 36–1002 through 36–1002.08, as urged by MacDonald, would result in the words "shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than [a certain number of] years" as wholly superfluous and, hence, has no support either in law or reason.

■■■ The conclusion we have reached concerning the questioned statutes is not novel. Several cases, decided before MacDonald's conviction, reached a similar conclusion. *See State v. Ross,* 108 Ariz. 245, 495 P.2d 841 (1972); *State v. Espinosa,* 101 Ariz. 474, 421 P.2d 322 (1966); *State v. Smith,* 13 Ariz.App. 507, 478 P.2d 122 (1970); *State v. Dominguez,* 16 Ariz. App. 592, 494 P.2d 1337 (1972). And in *State v. Rice,* 110 Ariz. 210, 516 P.2d 1222 (1973), decided before MacDonald's release, in a prosecution for child molesting and lewd and lascivious acts, A.R.S. §§ 13–652 and 13–653, we pointed out that:

> "Unlike the provisions of the Narcotic Drug Act, there is nothing in the statutes in question which would suggest that the Legislature intended to deprive a defendant of the special statutory credits provided in the foregoing sections." 110 Ariz. at 213, 516 P.2d at 1225.

We think it clear that the legislature intended that those persons convicted under A.R.S. §§ 36–1002 through 36–1002.08 with the exception of A.R.S. §§ 36–1002.04 through 36–1002.05B,[1] are not eligible for parole until they have served the minimum time expressed in the statute and that the Warden had no legal right to release MacDonald.

■■ The Attorney General and MacDonald urge that nevertheless the parole restrictions cannot be applied to MacDonald or to others convicted under like circumstances prior to the publication of Opinion No. 73–13. It is argued that to do so would violate the *ex post facto* prohibition of Article I, § 10 of the United States Constitution. Their position is based upon the case of *Love v. Fitzharris,* 460 F.2d 382 (9th Cir. 1972). We do not, however, find *Love* as authoritative precedent for several reasons.

Aside from the vacation of the judgment of the District Court, see *Fitzharris v. Love,* 409 U.S. 1100, 93 S.Ct. 896, 34 L. Ed.2d 682 (1973), this case is readily distinguishable on its facts. The Circuit Court in *Love* noted that the California courts had not considered the question. It said that "the interpretation of the relationship between the statutes placed upon them by the administrative agency charged with their enforcement has the force and effect of law." To the contrary in this state, both this Court and the Court of Appeals have addressed their attention to the question prior to MacDonald's conviction and construed the words "shall not be eligible for release upon completion of sen-

---

1. Sections 36–1002.04 and 36–1002.05A and B do not contain restrictions against release.

tence, or on parole, or on any other basis until he has served not less than [a certain number of] years" to mean just what they say. Hence, an interpretation placed upon the statutes by an administrative agency contrary thereto would be erroneous and would not have the force and effect of law.

Second, the statement in *Love* that a "new administrative interpretation which subjects the prisoner already sentenced to more severe punishment has the same effect as a new statute lengthening his present term * * * or a new court decision making what was lawful when done a crime * * * ; each 'alters the situation of the accused to his disadvantage . . .' * * * and each is prohibited by the Constitution" has no application to this case. MacDonald was not subjected to a more severe punishment, since prior decisions have held that the statutory restrictions on release must be followed. There is no legal basis for MacDonald's claim that he was surprised by the action of the respondent court in requiring him to serve three years in prison.

A.R.S. § 36–1002.07, as interpreted by this Court prior to MacDonald's conviction, gave fair warning of the consequences of its violation. *Huddleston v. United States,* 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974). Unlike *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), relied on by the court in *Love,* this case does not involve an unexpected judicial decision. Our holding today is not so unforeseeable as to constitute either a deprivation of due process or a violation of *ex post facto* provisions of the United States and Arizona Constitutions.

■■■ MacDonald finally contends that the application of Attorney General Opinion No. 73–13 to him denies him equal protection of the law. His equal protection argument is, in effect, that if we allow the respondent court's order to stand, it will have the effect of selectively applying the proper interpretation of A.R.S. § 36–1002.-07 to him, while persons similarly situated, convicted of a narcotics offense prior to Attorney General Opinion No. 73–13, will have had their parole eligibility computed as provided under the erroneous Opinion No. 63–35. In support of his argument, MacDonald cites us to *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). We do not find that case controlling. Through no possible stretch of the imagination is MacDonald's situation similar. There is here no charge that MacDonald is being discriminated against because of race, religion or nationality. Moreover, MacDonald has not complied with every requisite of law, as did Yick Wo. We do not believe that the release of a criminal is required merely because some others were erroneously released. Illegal windfalls are not binding precedent for future conduct.

Selective enforcement of laws is not, in itself, a federal constitutional violation. *United States v. Brookshire,* 514 F.2d 786 (10th Cir. 1975). Only when the selection is based upon an unjustifiable standard such as race, religion or other arbitrary classification is there a denial of equal protection. *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962) ; *United States v. Berrigan,* 482 F.2d 171 (3d Cir. 1973) ; *United States v. Bell,* 165 U.S. App.D.C. 146, 506 F.2d 207 (1974).

We think the foregoing is sufficient to answer the more serious questions presented. The petitioner's request for relief is denied.

CAMERON, C. J., and HOLOHAN and GORDON, JJ., concur.

HAYS, Justice (specially concurring) :

I concur in the result reached by the majority opinion, but I am concerned with language which implies that the warden of the State Prison can be held in contempt of court even though he was obeying the law as interpreted by the Attorney General, his legal counsel.

The early cases of *State v. Superior Court,* 30 Ariz. 332, 246 P. 1033 (1926), and *In re Wright,* 36 Ariz. 8, 281 P. 944 (1929), have never been specifically overruled, but I believe that *Ellison v. Mummert,* 105 Ariz. 46, 459 P.2d 306 (1969), tends to do so. In that case we said:

> "An adjudication of contempt must be based on specific facts found which show knowledge of the order, ability to comply with it, and contumacious conduct on the part of the accused amounting to wilful violation." 105 Ariz. at 46, 459 P.2d at 306.

Obviously the alleged contempt here is not criminal and therefore ARS § 12–864 applies. Under that statute wilfulness is a necessary element of the contemptuous act alleged.

With the foregoing reservation, I concur.