This is an appeal from the denial of a petition for writ of habeas corpus. The issue presented is whether or not a person convicted and sentenced for trafficking in drugs under Alabama Code 1975, § 20-2-80 (1980), is eligible to receive "good time" under the Alabama Correctional Incentive Time Act (ACIT Act), Alabama Code 1975, § 14-9-40 to 44 (1980). We hold that the "good time" act does apply to a person convicted of trafficking.
David H. Roberts was convicted for trafficking in cocaine and received the minimum sentence authorized by law for that offense: three years' imprisonment without parole and a fine of $50,000. See Alabama Code 1975, § 20-2-80 (2)(a) (1975). His appeal of that conviction was affirmed in Roberts v. State,451 So.2d 422 (Ala.Cr.App. 1984). *Page 1294 
Roberts began serving his sentence on July 9, 1984. He filed his habeas corpus petition on May 20, 1985. At the hearing on this petition, it was stipulated that if Roberts received good time he would be eligible for release on September 15, 1985, but that the Alabama Board of Corrections did not grant good time to prisoners convicted of trafficking in drugs. The Board classified Roberts as a "Class IV"[1] prisoner who was ineligible to receive good time because of his trafficking conviction, even though Roberts is and has been serving his sentence as a trusty at the Morgan County Jail and would otherwise be eligible for good time.[2]
In denying the habeas corpus petition, the Circuit Court found that, "the defendant is properly classified and is due to serve the three-year sentence imposed by the court. He is not entitled to deductions of time from his sentence as provided in Section 14-9-41 of the Code of Alabama, 1975, referred to as `good time' and denial of such deductions is not a denial of due process."
The Alabama Correctional Incentive Time Act became effective on May 19, 1980, and provides:
 "(a) Each prisoner who shall hereafter be convicted of any offense against the laws of the state of Alabama and is confined, in execution of the judgment or sentence upon any conviction, in the penitentiary or at hard labor for the county or in any municipal jail for a definite or indeterminate term, other than for life, whose record of conduct shows that he has faithfully observed the rules for a period of time to be specified by this article may be entitled to earn a deduction from the term of his sentence as follows:
 "(1) Seventy-five days for each 30 days actually served while the prisoner is classified as a Class I prisoner.
 "(2) Forty days for each 30 days actually served while the prisoner is a Class II prisoner.
 "(3) Twenty days for each 30 days actually served while the prisoner is a Class III prisoner.
 "(4) No good time shall accrue during the period the prisoner is classified as a Class IV prisoner."
 Alabama Code 1975, § 14-9-41 (a) (1980) (emphasis added).
This Act contains no provision excluding a person convicted of trafficking from its field of operation, although it specifically excludes from receiving good time those persons convicted of a Class A felony, sentenced to life, sentenced to death, or sentenced to ten years or more. § 14-9-41 (e). The ACIT Act also prohibits offenders convicted of certain types of assaults or sexual abuse from being classified as Class I prisoners. § 14-9-41 (e).
On May 28, 1980, just nine days after the ACIT Act was passed and became effective, the legislature approved and made effective Alabama's Trafficking in Illegal Drugs Act. Alabama Code 1975, § 20-2-80 (1980). Roberts was convicted under §20-2-80 (2)(a) of that act which provides:
 "Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine or of any mixture containing cocaine, described in section 20-2-25 (1), is guilty of a felony, which felony *Page 1295 
shall be known as `trafficking in cocaine.' If the quantity involved:
 "a. Is 28 grams or more, but less than 200 grams, such person shall be sentenced to a mandatory minimum term of imprisonment of three calendar years and to pay a fine of $50,000.00." (Emphasis added.)
Section 20-2-81 (a) of the Trafficking Act provides:
 "Notwithstanding the provisions of Chapter 22, Title 15 [Pardons, Paroles and Probation], with respect to any person who is found to have violated this article, adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for parole prior to serving the mandatory minimum term of imprisonment prescribed by this article."
"The fundamental rule of statutory construction is that a court is under a duty to ascertain and effectuate legislative intent as expressed in the statute, . . . which may be gleaned from the language used, the reason and necessity for the act and the purpose sought to be obtained." Shelton v. Wright,439 So.2d 55, 57 (Ala. 1983). "The judiciary's fundamental role, in the realm of statutory construction, is ascertaining and effectuating legislative intent. . . . Consequently, when the statutory pronouncement is distinct and unequivocal, there remains no room for judicial construction and the clearly expressed intent must be given effect." Dumas BrothersManufacturing Company, Inc. v. Southern Guaranty InsuranceCompany, 431 So.2d 534, 536 (Ala. 1983).
Alabama's Trafficking Act is clear and unambiguous in its provisions. Uncertainty is injected into the Act only when its provisions are attempted to be broadened or expanded beyond the language of the Act. The relevant portion of § 20-2-80 provides that a person convicted of trafficking in illegal drugs "shall be sentenced to a mandatory minimum term of imprisonment of three calendar years." That section does not provide that a person convicted of trafficking must actually serve a three-year sentence.
Section 20-2-81 (a) has two parts. The first provides that when a person is convicted of trafficking, "adjudication ofguilt or imposition of sentence shall not be suspended, deferred, or withheld." (Emphasis added.) Clearly, this relates to the time when a convict shall begin serving his sentence and excludes such things as probation. Ex parte Jones,444 So.2d 888 (Ala. 1983). The second part of § 20-2-81 (a) provides that "such person . . . [shall not] be eligible for parole prior to serving the mandatory minimum term of imprisonment." This means exactly, but only what it states: That no person convicted of trafficking shall be eligible for parole until that person has served a sentence of three calendar years. "[I]t is well established that criminal statutes should not be `extended by construction.'" Ex parte Evers, 434 So.2d 813, 817 (Ala. 1983). Penal statutes "are to reach no further in meaning than their words." Scott v. State, 152 Ala. 63, 64, 44 So. 544, 545
(1907).
Neither § 20-2-80 nor § 20-2-81 mentions good time and nothing in either section excludes the operation of the ACIT Act. "Where more than one statute is involved, . . . [each statute] should be construed in harmony with other statutes in effect, so far as is practical." Siegelman v. Folmar,432 So.2d 1246, 1249 (Ala. 1983). Even inconsistent statutes should be "harmonized unless in irreconcilable conflict." Waters v. Cityof Birmingham, 282 Ala. 104, 109, 209 So.2d 388 (1968).
If the legislature had intended that every person convicted of trafficking must actually serve a minimum sentence of three calendar years, it would have been a simple matter to state exactly that. The Alabama Legislature is not a foreigner to providing mandatory prison terms for felony convictions. See Alabama's Habitual Felony Offender Act, Alabama Code 1975, §13A-5-9. As in Jones, 444 So.2d at 890, "[w]e cannot read into the statute a provision which the legislature did not include." *Page 1296 
The comments of our Supreme Court in Jones with regard to bail are applicable here:
 "Section 20-2-81 provides that persons who are found guilty of violating the trafficking statute shall not be considered for pardon, probation or parole. It does not say that such persons shall also be denied bail pending appeal, a right granted by § 12-22-170
to all convicted criminal defendants whose sentence is twenty years or less. The legislature could have withheld this privilege, as well as probation, pardon and parole, had it chosen to do so, but it did not refer to § 12-22-170 either expressly or by referring to bail pending appeal." Ex parte Jones, 444 So.2d at 890.
Alabama's Trafficking Act does not prohibit persons convicted under its provisions from earning "good time", a right granted to "each prisoner" under § 14-9-41. Here, as in Jones, supra, the legislature could have withheld this privilege in addition to probation, pardon, and parole, had it chosen to do so. "Where a statute enumerates certain things on which it is to operate, the statute is to be construed as excluding from its effect all things not expressly mentioned." Geohagan v. GeneralMotors Corp., 291 Ala. 167, 171, 279 So.2d 436, 439 (1973). This is not one of those "occasions when courts must correct or ignore obvious inadvertences in order to give a law the effect which was plainly intended by the legislature." First AlabamaBank of Dothan v. Renfro, 452 So.2d 464, 468-69 (Ala. 1984).
"It is a fundamental principle of statutory construction that in enacting the statute the legislature had full knowledge and information as to prior and existing law and legislation on the subject of the statute." Miller v. State, 349 So.2d 129, 131
(Ala.Cr.App. 1977). This Court must presume that "the legislature made an informed judgment as to the need in employing this classification." Belcher v. McKinney,333 So.2d 136, 140 (Ala. 1976). The Trafficking Act became effective just nine days after the effective date of the ACIT Act authorizing good time to "[e]ach prisoner" thereafter convicted of "any offense". An indication that the legislature was actually aware of both acts is the fact that, while the Trafficking Act excludes a person convicted of trafficking from parole until that person has served three years' imprisonment, "good time" deductions from a prisoner's sentence are not used for determining an inmate's eligibility for parole. § 14-9-42.
In Ex parte Jones, 444 So.2d at 890, our Supreme Court noted: "The legislature obviously intended that all persons convicted of trafficking would receive a minimum mandatory sentence . . . and that the sentence would be served. Neither the trial courts nor the Pardon and Parole Board has the power to reduce or suspend the mandated sentence." While this language might seem to conflict with our decision that "good time" deductions are authorized from the "minimum mandatory sentence," we perceive no irreconcilable conflict. The quoted portion of the Jones
opinion is in the nature of dicta as it is not essential to the Court's holding that a convict was entitled to bail pending appeal. More significantly, in Jones the Supreme Court was not presented with and did not consider the issue before this Court today. It is our opinion that the legislature obviously intended that all persons convicted of trafficking would serve the minimum mandatory sentence except for deductions for good time. In this case, it is the legislature, not the trial courts nor the Board of Pardons and Paroles, who has "reduced" the "mandated" sentence. Additionally, we note that Roberts is in fact serving his three-year sentence.
Although this issue is one of first impression in Alabama, our conclusion is not without precedent. The case of Mastellerv. Board of Control of State Institutions, 251 Iowa 234,100 N.W.2d 111 (1959), directly supports our holding. There, the prisoner was convicted under the Iowa Uniform Narcotic Drug Act. The penalty provisionvision *Page 1297 
of the Act provided that, "the imposition or execution of sentence shall not be suspended and probation or parole shallnot be granted until the minimum imprisonment herein providedfor the offense shall have been served." Id. at 237, 100 N.W.2d at 113 (emphasis in original).
The Iowa Supreme Court held that the prisoner was entitled to the benefit of the "good time" statutes:
 "It appears to this court that according to the plain and unambiguous language of these sections they apply to convictions under the Uniform Narcotic Drug Act, Chapter 204, Code of 1954, I.C.A. "It is true, as indicated, section 204.22, subd. 4, provides that `probation or parole shall not be granted until the minimum imprisonment . . . shall have been served' but there is no prohibition against giving credit for `good time'. "Had the legislature intended such credit should not be given, it would no doubt have so stated.
 "It is expressly provided that . . . probation or parole shall not be granted until the minimum imprisonment for the offense shall have been served. Had it been the legislative intent that `good time' should not be allowed the lawmakers surely would have said so. These sections cannot be repealed by implication. The plaintiff is entitled to the benefit of these statutes which were enacted in the interests of better discipline and in support of the efforts to reform the inmates of the institution and improve their chances of becoming good citizens. Such statutes no doubt have done incalculable good in making the prisoners responsive to all efforts to rehabilitate them." Masteller, 251 Iowa at 240-241, 100 N.W.2d at 114.
Our conclusion is also buttressed by James v. Department ofCorrections, 424 So.2d 826 (Fla.Dist.Ct.App. 1982). Florida's mandatory gun law provided that any person convicted under the statute shall serve a mandatory minimum term of imprisonment of three calendar years and that such person shall not be eligible for parole or statutory gain-time prior to serving that minimum sentence. Applying the general principles of statutory construction which state that the mention of one thing implies the exclusion of another, and that where a statute enumerates the things on which it is to operate, it is ordinarily construed as excluding from its operation all those not expressly mentioned, the Florida Court held that there was no authority for prohibiting a prisoner from earning workgain-time while serving a minimum mandatory sentence under the mandatory gun law. James, 424 So.2d at 827. See also Curry v.Department of Corrections, 423 So.2d 584 (Fla.Dist.Ct.App. 1982).
We recognize that other states have concluded that particular statutes with mandatory minimum sentences exclude deductions for good time. However, even those cases do not conflict with our holding because the results in those cases are based on the wording of the particular statutes involved.
State v. Deddens, 112 Ariz. 425, 542 P.2d 1124 (1975), held that the provisions of the Arizona Uniform Narcotic Drug Act required that one convicted under that Act be sentenced to imprisonment "from five years to life and shall not be eligible for release upon completion of sentence, or on parole, or onany other basis until he has served not less than three years."112 Ariz. at 427-28, 542 P.2d at 1126-27 (emphasis added). Before serving three years, the prisoner was released on parole
after receiving statutory deductions for good behavior on the authority of a state attorney general's opinion which the Arizona Court found "misinterprets the manner in which the mandatory minimum sentences . . . are to be calculated." Id. at 428, 542 P.2d at 1127. Not only does the specific wording of the Arizona statute differ from Alabama's, but our "good time" law provides that "[n]o deduction from sentence provided by this article will be used for determining *Page 1298 
an inmate's eligibility for parole." Alabama Code 1975, §14-9-42.
In Richmond v. State, 446 A.2d 1091 (Del. 1982), the Supreme Court of Delaware held that the minimum mandatory sentence for a robbery conviction could not be reduced by credits earned for good behavior otherwise entitling an offender to diminution of confinement. In Delaware, "good time" deductions were used to establish a prisoner's initial parole eligibility date and a prisoner released under the provisions of the good time act were "deemed as released on parole." Richmond, 446 A.2d at 1094. Again, Alabama's good time law does not affect parole eligibility.
Finally, in Martinez v. Cox, 75 N.M. 417, 405 P.2d 659
(1965), the Supreme Court of New Mexico held that good time allowances, for the purpose of final discharge from imprisonment for a narcotics offense, were only deductible from the maximum sentence provided by law. In that state also, good time was used to fix the initial parole eligibility date. The court observed that the contrary conclusion reached inMasteller, supra, "resulted largely from a consideration of the history of the Iowa indeterminate sentence law and the various amendments to that state's Narcotic Drug law, as well as important differences between ours and the Iowa indeterminate sentence law." Martinez, 75 N.M. at 419, 405 P.2d at 660. Thus, it is clear that the specific and particular language of Alabama's statutes must govern and control our conclusion in this case that Alabama's Trafficking Act does not prohibit or exclude an individual convicted under its provisions from a deduction from sentence for correctional incentive time provided in the ACIT Act.
Consequently, the judgment of the Circuit Court denying Roberts' petition for writ of habeas corpus is hereby reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.
[1] The ACIT Act provides that, "Class IV is for prisoners not yet classified and for those who are able to work and refuse, or who commit disciplinary infractions of such a nature which do not warrant a higher classification, or inmates who do not abide by the rules of the institution. Inmates who are classified in this earning class receive no correctional incentive time. This class is generally referred to as `flat time' or `day-for-day.' Any inmate shall remain in this classification for a minimum period of 30 days before being eligible for Class III." Alabama Code 1975, § 14-9-41 (c)(4) (1980).
[2] Alabama Code 1975, § 14-9-41 (c)(1) provides: "Class I is set aside for those prisoners who are considered to be trustworthy in every respect and who, by virtue of their work habits, conduct and attitude of cooperation have proven their trustworthiness. An example of a Class I inmate would be one who could work without constant supervision by a security officer."