IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**EDWARDO SERRATO, III,**
*Appellant.*

No. CR-24-0264-PR
Filed May 14, 2025

Appeal from the Superior Court in Mohave County
The Honorable Billy K. Sipe, Judge *Pro Tempore*
No. S8015CR201800630
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
557 P.3d 795 (App. 2024)
**VACATED**

COUNSEL:

Kristin K. Mayes, Arizona Attorney General, Alice M. Jones (argued), Deputy Solicitor General, Michael T. O'Toole, Assistant Attorney General, Phoenix, Attorneys for State of Arizona

Chad Joshua Winger (argued), Harris & Winger, P.C., Flagstaff, Attorneys for Edwardo Serrato, III

Nicholas Bustamante, Ballecer & Segal, LLP, Phoenix, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

VICE CHIEF JUSTICE LOPEZ authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, JUSTICES BOLICK, BEENE, MONTGOMERY, KING, and BERCH (Retired)* joined.

_____

VICE CHIEF JUSTICE LOPEZ, Opinion of the Court:

¶1        We consider whether an arsonist's lone presence at the time of the crime is sufficient to support a conviction for arson of an "occupied structure" under A.R.S. § 13-1704.  An "occupied structure" is one "in which one or more human beings either is or is likely to be present or so near as to be in equivalent danger at the time the fire or explosion occurs." A.R.S. § 13-1701(2).  The dispositive issue is whether, in committing arson of an "occupied structure," an arsonist qualifies as a "human being" under § 13-1701(2).

¶2        We hold that, in context, the meaning of "occupied structure" in §§ 13-1701(2) and -1704 unambiguously excludes arsonists.  An alternative interpretation would render A.R.S. § 13-1703 nearly superfluous and undermine the tiered arson statutory scheme.  Accordingly, we interpret "occupied structure" in §§ 13-1701(2) and -1704 to mean a structure in which one or more human beings—other than the arsonist—are present, likely to be present, or so near as to be in equivalent danger at the time of the fire or explosion.

## BACKGROUND

¶3        On Christmas night in 2007, firefighters in Kingman, Arizona extinguished a fire engulfing a pickup truck.  Investigators smelled gasoline fumes and discovered a residue of unusual flammable liquids and remnants of a gas can on the driver's seat.  Based on the evidence, investigators confirmed that someone had intentionally set the fire inside the truck.

_____

* Justice Maria Elena Cruz is recused from this matter.  Pursuant to article 6, section 3 of the Arizona Constitution, Justice Rebecca White Berch (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

¶4　　　　　Officers traced the truck's registration to Anna Hammond, who lived about a mile from the fire. When police entered her home, they found her and her dog lying on the floor in a pool of blood. The dog was dead, and Hammond later died from her injuries. The kitchen stove was on, gas fumes filled the home, and someone had tried to start a fire on the kitchen table. Hammond's jewelry, gun, coins, and cash were also missing.

¶5　　　　　A grand jury indicted Edward Serrato III for these crimes. After a seven-day trial in 2023, a jury convicted him of second degree murder, first degree burglary, arson of an occupied structure (the vehicle), theft of means of transportation, and attempted arson of an occupied structure (the house). The court imposed consecutive sentences for each of these charges, totaling 135 years—35 of which stemmed from the vehicle arson conviction.

¶6　　　　　Serrato appealed his convictions and resulting sentences. The court of appeals, on its own motion, ordered supplemental briefing on the vehicle arson conviction. The catalyst was the prosecutor's claim during closing arguments that "[Serrato] himself was obviously present when he set the truck on fire, so his presence alone makes the truck an occupied structure, even if no one was inside the vehicle."

¶7　　　　　The court of appeals issued a memorandum decision affirming Serrato's convictions and sentences for second degree murder, first degree burglary, theft of means of transportation, and attempted arson of an occupied structure (the house). *See State v. Serrato* ("*Serrato II*"), No. 1 CA-CR 23-0384, 2024 WL 4216167, at *1 ¶ 1 (Ariz. App. Sept. 17, 2024) (mem. decision). The court also issued an opinion on the vehicle arson conviction acknowledging that there was no evidence that anyone besides the defendant was in or near the truck when the fire started. *State v. Serrato* ("*Serrato I*"), 557 P.3d 795, 796 ¶ 7 (Ariz. App. 2024). Nevertheless, the court held that Serrato's presence alone satisfied the occupancy requirement under § 13-1704 and affirmed his conviction and sentence. *See id.* at 796 ¶ 7, 797 ¶ 12.

¶8　　　　　Serrato petitioned this Court for review. We granted review to address an issue of first impression and statewide importance that is likely to recur: whether an arsonist's presence alone is sufficient to support a conviction of arson of an occupied structure under § 13-1704. We have

jurisdiction under article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.

## DISCUSSION

¶9 Whether an arsonist's lone presence is sufficient to support a conviction under § 13-1704 involves statutory interpretation, a matter we review de novo. *See Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 137, 142 ¶ 13 (2024). When interpreting statutes, this Court starts with the text. *Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 411 ¶ 8 (2023). "We interpret statutory language in view of the entire text, considering the context and related statutes on the same subject." *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019). If a statute's text is clear and unambiguous, it controls unless it results in an absurdity or a constitutional violation. *4QTKIDZ, LLC v. HNT Holdings, LLC*, 253 Ariz. 382, 385 ¶ 5 (2022). However, "[i]f the statutory language is ambiguous—if 'it can be reasonably read in two ways'—we may use alternative methods of statutory construction, including examining the rule's historical background, its spirit and purpose, and the effects and consequences of competing interpretations." *Planned Parenthood Ariz.*, 257 Ariz. at 142 ¶ 17 (quoting *State v. Salazar-Mercado*, 234 Ariz. 590, 592 ¶ 5 (2014)).

## I.

¶10 Section 13-1704(A), which establishes arson of an occupied structure, provides that "[a] person commits arson of an occupied structure by knowingly and unlawfully damaging an occupied structure by knowingly causing a fire or explosion." As a class 2 felony, arson of an occupied structure is the most severe arson offense. *Compare* § 13-1704(B), *with* A.R.S. § 13-1702(B) (reckless burning: class 1 misdemeanor) *and* § 13-1703(B) (arson of unoccupied structure: class 4 felony; arson of property: class 1 misdemeanor or class 4 or 5 felony depending on the property's value).

¶11 Hammond's truck constitutes a structure because § 13-1701(4) defines "structure" as including "any building, object, *vehicle*, watercraft, aircraft or place with sides and a floor, used for lodging, business, transportation, recreation or storage." (Emphasis added.) But the pertinent and closer question is whether Hammond's truck constitutes an "*occupied* structure" under § 13-1701(2). (Emphasis added.)

4

¶12        An "occupied structure" is a structure "in which one or more human beings either is or is likely to be present or so near as to be in equivalent danger at the time the fire or explosion occurs." § 13-1701(2). Under § 13-1701(2), we must consider Hammond's truck an "occupied structure" if (1) a human being was inside the truck, (2) a human being was likely to be inside the truck, or (3) a human being was so near the truck as to be in equivalent danger. Whether Serrato, as the arsonist, qualifies as a "human being" for purposes of the occupancy requirement depends on the statute's contextual plain meaning.

## II.

¶13        Section 13-1701 does not define "human being." Because the legislature adopted § 13-1701 in 1977, contemporary dictionary definitions control. *See Garibay v. Johnson*, 565 P.3d 236, 243 ¶ 24 (Ariz. 2025) ("Absent a statutory definition, we may consider dictionaries and written publications to discern the word's common meaning and usage, respectively, at the time the legislature enacted the statute."). Those definitions confirm that "human being" encompasses all people. *See Human Being*, The American Heritage Dictionary of the English Language (1969) ("A member of the genus Homo, and especially of the species Homo sapiens"); *Human Being*, Ballentine's Law Dictionary (1969) ("A person, male or female.").

¶14        In line with these definitions, the court of appeals determined that the "occupied structure" definition under § 13-1701(2) was "unambiguous" because "[b]y its plain language, 'one or more human beings' encompasses all human beings—including the defendant." *Serrato I*, 557 P.3d at 796 ¶ 10 (quoting § 13-1701(2)). Accordingly, the court upheld Serrato's conviction because "[a] defendant's presence alone is sufficient to sustain a conviction for arson of an occupied structure" under § 13-1704. *Id.* at 797 ¶ 12.

¶15        But the court of appeals conflated textualism with literalism. Literalism, also known as strict constructionism, involves "a narrow, crabbed reading of a text." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 355–56 (2012). Textualism, on the other hand, "does not limit one to the hyperliteral meaning of each word in the

text." *Id.* at 356. We do not interpret a statute's plain text hyper literally to determine whether it is unambiguous. *See In re Drummond*, 257 Ariz. 15, 18 ¶ 5 (2024); *see also Niz-Chavez v. Garland*, 593 U.S. 155, 168–69 (2021) (noting that "when interpreting this or any statute, we do not aim for 'literal' interpretations," instead, "textual and contextual clues persuade us of [a] statute's ordinary meaning").

**¶16**      Rather, Arizona courts analyze whether the "statute's plain language is unambiguous *in context*." *Drummond*, 257 Ariz. at 18 ¶ 5 (emphasis added). "In context" means reading statutes as a cohesive whole so that "no word or provision is rendered superfluous." *In re Riggins*, 257 Ariz. 28, 31 ¶ 12 (2024). Indeed, "one of the more important [statutory construction] rules is that effect shall, if possible, be given to every part of a statute." *Town of Florence v. Webb*, 40 Ariz. 60, 64 (1932). The court of appeals overlooked several contextual clues that inform the meaning of "human being" in § 13-1701(2).

**A.**

**¶17**      Section 13-1704 targets "[a] person" who knowingly damages "an occupied structure," signaling a distinction between the actor (the arsonist) and the object of the offense (a structure occupied by others). While the legislature used "person" to refer to the arsonist, it used "human being" in § 13-1701(2)'s definition of "occupied structure," indicating that the legislature did not intend for the arsonist to be the "human being" referenced in § 13-1701(2). This actor-object structure mirrors other title 13 statutes that distinguish the defendant from "human beings" potentially at risk. For example, A.R.S. § 13-3102(A)(9) prohibits a person from "[d]ischarging a firearm at an occupied structure," and A.R.S. § 13-3101(6) defines "occupied structure" as one where "one or more human beings" are present or in equivalent danger. In these statutes, the term "human beings" refers to third parties—not the shooter—at risk of harm. So too here. While § 13-1701(2) defines "occupied structure" as including "human beings," it does not nullify the actor-object distinction in § 13-1704. Instead, § 13-1704 presumes a structure occupied by others, not merely the actor setting it ablaze.

**¶18**      The definition of "occupied structure" further supports this reading. Section 13-1701(2) defines "occupied structure" as including "any dwelling house, whether occupied, *unoccupied or vacant*." (Emphasis

added.)   Because the arsonist is almost always present, if the arsonist's presence alone was enough to satisfy the statute, the term "vacant" would be insignificant.  *See State v. Deddens*, 112 Ariz. 425, 429 (1975) (noting that we avoid rendering statutory language "superfluous, void, contradictory or *insignificant*" (emphasis added)).  "[W]hen possible, we interpret statutes to give meaning to every word."  *State v. Gates*, 243 Ariz. 451, 454 ¶ 13 (2018) (quoting *State v. Pitts*, 178 Ariz. 405, 407 (1994)).  We decline to construe § 13-1701(2) in a way that would render the term "vacant" mere surplusage. *See Deddens*, 112 Ariz. at 429; *see also Mussi v. Hobbs*, 255 Ariz. 395, 398 ¶ 13 (2023) (stating that courts give meaning to every word in statutes to avoid rendering any part inert or trivial).  Rather, the inclusion of "vacant" confirms that the statute anticipates scenarios where no one—arsonist or victim—is present.  This language suggests that occupancy requires the presence or likely presence of others, not the arsonist.

**B.**

¶19        The court of appeals also ignored the context of the broader arson statutory scheme.  Courts read statutes in harmony to avoid leaving any provision "superfluous, void, contradictory or insignificant."  *Deddens*, 112 Ariz. at 429; *see also City of Phoenix v. Yates*, 69 Ariz. 68, 72 (1949) (noting that we give meaning to "[e]ach word, phrase, and sentence . . . so that no part will be void, inert, redundant, or trivial").  We are also guided by A.R.S. § 13-104, which instructs us to interpret statutes to "promote justice and effect the objects of the law," and A.R.S. § 13-101, which requires us to distinguish between serious and minor offenses and to ensure proportionality.

¶20        Arizona's criminal code defines three tiers of arson.  The least severe offense, reckless burning, is a class 1 misdemeanor and applies when someone "recklessly" causes a fire or explosion that damages an "occupied structure, a structure, wildland or property."  § 13-1702.  The next tier, arson of a structure or property, a class 4 felony depending on property value, occurs when a person damages "a structure or property by knowingly causing a fire or explosion."  § 13-1703.  The most severe offense, arson of an occupied structure, is a class 2 felony and applies when a defendant "knowingly" causes a fire or explosion to an "occupied structure." § 13-1704.   The primary difference between the crimes delineated in §§ 13-1703 and -1704 is the "occupied" requirement.

**¶21** Serrato argues that, under the court of appeals' reasoning, nearly every instance of arson involving a structure would automatically fall under § 13-1704 since the arsonist's presence alone would satisfy the statutory definition of "occupied." We agree. Under that reading, § 13-1703 would retain only modest remaining application. To be sure, § 13-1703 would still cover arson of property that is not a structure. But, as for arson to structures, § 13-1703 would conceivably only apply to remote arsonists—those who start a fire while at a safe distance from the structure.

**¶22** Perhaps even this assessment overstates § 13-1703's residual application under the court of appeals' interpretation. Under § 13-1701(2), an "occupied structure" also includes a structure where a human being is "likely to be present." So, even if a remote arsonist is not physically present or near enough to be in equivalent danger, a court could deem the arsonist "likely to be present" at the time of ignition because setting a remote incendiary device may result in a premature ignition. Thus, the court of appeals' interpretation does not merely broaden § 13-1704—it effectively displaces § 13-1703 as a viable, independent offense concerning arson of structures.

**¶23** This outcome is at odds with the legislature's tiered approach, which assigns greater penalties to arson offenses that create heightened risks to innocent human life. *See* § 13-101(4) (providing that the public policy of this State is "[t]o differentiate on reasonable grounds between serious and minor offenses and to prescribe proportionate penalties for each"). Indeed, while arson of a "structure" is a class 4 felony, arson of an occupied structure is a class 2 felony, with the latter resulting in harsher sentencing. *Compare* § 13-1703(B), *with* § 13-1704(B). And, as Serrato argues, arson of an "occupied structure" is a more serious offense because of the inherent danger to property *and* persons. In *State v. Gatliff*, 209 Ariz. 362, 366 ¶ 18 (App. 2004), the court of appeals held that arson of an occupied structure justifies a "greater term of imprisonment" precisely because it involves the risk of serious injury to a person inside. As such, we decline to strip § 13-1703, a separate crime, of its meaning and vitality without express instruction from the legislature.

**¶24** We rejected a similarly problematic interpretation in *City of Mesa v. Killingsworth*, 96 Ariz. 290, 294–95 (1964), where reading "fuel" to include all liquids used in motor vehicles would have rendered another tax

provision on motor vehicle fuel meaningless. There, this Court reasoned that "if by A.R.S. § 28-126 the legislature meant to include all liquids used in motor vehicles on highways other than kerosene, then the language used in A.R.S. § 28-1551, taxing liquids used in internal combustible engines to propel motor vehicles on highways, is surplusage" and "meaningless." *Id.* at 294 ("If it were intended that all liquids were to be taxed under § 28-126, then there are no liquids to be taxed under § 28-1551.").

**¶25**     Just as we concluded in *Killingsworth* that the legislature could not have intended to enact a provision with no operative effect, the same principle applies here. Reading "human beings" in § 13-1701(2) as including the arsonist significantly circumscribes the lesser offense of arson of a structure under § 13-1703. And we presume the legislature did not intend to do a "futile thing" by including a provision that largely serves no purpose regarding arson of structures. *See Killingsworth*, 96 Ariz. at 294–95; *see also In re M.N.*, 563 P.3d 136, 142 ¶ 30 (Ariz. 2025) (interpreting two statutes to avoid creating "multiple requirements" rendering one of the statute's provisions "superfluous").

**¶26**     Our decision in *State v. Ewer*, 254 Ariz. 326, 329 (2023), also buttresses our contextual statutory analysis. In *Ewer*, the question was whether "the reference to 'person' in [A.R.S.] § 13-404(A) is necessarily limited to a defendant, as reflected in Arizona's self-defense jury instruction," or whether it could also include the victim. *Id.* ¶ 12. To resolve that question, we considered "the context of § 13-404(A) and related statutes on the same subject to properly discern the statutory definition." *Id.* ¶ 13. Upon considering "the related justification statutes . . . for context," we held that "person" reflects a focus on the defendant as "an individual accused of a crime and subject to criminal prosecution." *Id.* at 330 ¶ 14.

**¶27**     Similarly, here, analyzing the term "human beings" in § 13-1701(2) in context with the related arson statutes "provides the framework to decide this issue." *See id.* ¶ 17. The focus of the term is on persons other than the arsonist. We accordingly hold that the meaning of "occupied structure" in §§ 13-1701(2) and -1704 is unambiguous when read *in pari materia* with § 13-1703. Although an arsonist is a human being as that term is commonly defined and understood, the arsonist does not fall within the meaning of "one or more human beings" in § 13-1701(2).

### C.

**¶28** The court of appeals did not consider whether its literal interpretation of §§ 13-1701(2) and -1704 yielded an absurd result. *See Serrato I*, 557 P.3d at 796–97 ¶¶ 9–11. Serrato argues that the "court of appeals' overly strict construction of singular words divorced from statutory context in the arson statutes leads to absurd results." The State counters that the court of appeals' holding does not result in absurdity because it is not irrational for the legislature to protect all life, including the lives of arsonists.

**¶29** Because we agree with Serrato that the statutory text unambiguously excludes arsonists from the meaning of "occupied structure" in §§ 13-1701(2) and -1704, we need not decide whether the court of appeals' interpretation violates the absurdity doctrine. *See Perini Land & Dev. Co. v. Pima County*, 170 Ariz. 380, 383 (1992) (noting that the absurdity doctrine applies only if application of the plain meaning of the statute is "so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion" (alteration in original) (quoting *Bussanich v. Douglas*, 152 Ariz. 447, 450 (App. 1986))).

### D.

**¶30** The State and the court of appeals also invoke § 13-1701's pre-enactment history to bolster their interpretation. *Serrato I*, 557 P.3d at 797 ¶ 11. On January 17, 1977, the House Committee on the Judiciary originally introduced a version of § 13-1701 that defined "occupied structure" as one in which "one or more human beings, *other than a participant in the crime, unless such participant is the owner or occupant of the structure*, either is or is likely to be present or so near as to be in equivalent danger at the time the fire or explosion occurs." H.B. 2054, 33d Leg., 1st Reg. Sess. (as introduced by House Comm. on Judiciary, Jan. 17, 1977) (emphasis added). This version made clear that the arsonist's presence alone did not make a structure "occupied" unless they also owned or lived in it.

**¶31** But, on March 3, 1977, the House amended the definition of "occupied structure" as it is defined today. *See* H.B. 2054, 33d Leg., 1st Reg. Sess. (as amended by House Comm. on Judiciary, Mar. 3, 1977). The court

of appeals reads this omission as an invitation to include arsonists in the term "human beings." *See Serrato I*, 557 P.3d at 797 ¶ 11. But that conclusion relies on unenacted statutory language—a notoriously "unsure and unreliable guide" to statutory meaning. *City of Flagstaff v. Mangum*, 164 Ariz. 395, 401 (1990); *cf.* Scalia & Garner, *supra* ¶ 15, at 256 ("Statutory history—the statutes repealed or amended by the [enacted] statute under consideration"—"form[s] part of the context of the statute."). In any event, the statute's history is unhelpful where, as here, the statute is unambiguous in context. *See Ewer*, 254 Ariz. at 331 ¶ 20 ("We do not consider legislative history when the correct legal interpretation can be determined from the plain statutory text and the context of related statutes.").

**¶32** Even if we were to consider the pre-enactment evolution of the statutory language, it would not compel the State's desired outcome. At most, this record is ambiguous. The reason for the legislature's change is unclear, and nothing in the amended language compels the court of appeals' interpretation. It is just as plausible that the revision aimed to simplify the text rather than expand its scope. We decline to speculate about the meaning of language the legislature chose not to enact. *See State v. Prentiss*, 163 Ariz. 81, 85 (1989) (discussing separation of powers and noting that "courts as an institution are not involved in the wisdom of the legislation"); *see also* Scalia & Garner, *supra* ¶ 15, at 388–89 ("Rather than resolving uncertainty, legislative history normally induces it. Predicting when it will be entirely ignored, on the one hand, or considered dispositive, on the other, is—not to put too fine a point on it—a crapshoot.").

**E.**

**¶33** Finally, Serrato and Amicus invoke the rule of lenity. But "absent ambiguity, the rule of lenity does not apply." *State v. Fink*, 256 Ariz. 387, 389 ¶ 9 (App. 2023); *see also State v. Pena*, 140 Ariz. 545, 549–50 (App. 1983) (noting that "where the statute itself is susceptible to more than one interpretation, the rule of lenity dictates that any doubt should be resolved in favor of the defendant"), *aff'd*, 140 Ariz. 544 (1984); Scalia & Garner, *supra* ¶ 15, at 299 (noting that the rule of lenity applies only if "after all the legitimate tools of interpretation have been applied, 'a reasonable doubt persists'"). Because §§ 13-1701(2) and -1704 are unambiguous in context, this Court need not apply this "construction principle of last resort." *See State v. Bon*, 236 Ariz. 249, 253 ¶ 13 (App. 2014).

**CONCLUSION**

**¶34**        We interpret "occupied structure" in §§ 13-1701(2) and -1704 to mean a structure in which one or more human beings—other than the arsonist—are present, likely to be present, or so near as to be in equivalent danger at the time of the fire or explosion. *See Ewer*, 254 Ariz. at 330 ¶¶ 14–17 (harmonizing statutory language by interpreting "person" in the justification statutes to refer to criminal defendants rather than victims based on contextual clues). Our interpretation reflects the contextual meaning and operation of "occupied structure" in §§ 13-1701(2) and -1704, harmonizes §§ 13-1703 and -1704, and preserves the legislature's tiered arson punishment scheme.

**¶35**        We therefore vacate the court of appeals' opinion,[1] vacate Serrato's conviction and resulting sentence for arson of an occupied structure under § 13-1704, and remand the case to the trial court for further proceedings.

---

[1] Our decision does not affect the court of appeals' separate memorandum decision on Serrato's other convictions and sentences, *Serrato II*, 2024 WL 4216167.