521 P.2d 1119

Sydney **SELLINGER** and Mary Sellinger,
Appellants,

v.

**FREEWAY MOBILE HOME SALES, INC.,**
Topaz Industries, Harold Griffin and
Juanita Griffin, Appellees.

No. 11296–PR.

Supreme Court of Arizona,
In Banc.

May 6, 1974.

Stuart Herzog, Tucson, for appellants.

Hirsch & Pakula, by C. Robert Pursley, Tucson, for appellees Freeway Mobile Home Sales, Inc. and Harold and Juanita Griffin.

May & Dees, by William R. Dees, Tucson, for Topaz Industries.

Gary K. Nelson, Atty. Gen., Phoenix, by William P. Dixon and Christopher D. C. Hossack, Asst. Attys. Gen., amicus curiae.

STRUCKMEYER, Justice.

This action was brought to recover damages for the sale of a mobile home in which Topaz Industries was the manufacturer and Freeway Mobile Home Sales, Inc. was the seller. The Court of Appeals, Division 2, affirmed a judgment of the Superior Court in favor of appellees, 20 Ariz.App. 238, 511 P.2d 682. Opinion of the Court of Appeals vacated and judgment of the Superior Court reversed.

Appellants, Sydney and Mary Sellinger, husband and wife, are a retired couple, he a retired machinist and she a retired nurse. In September of 1970, they came to Tucson and decided to buy and live in a mobile home, although they had no previous experience with this type of living. They liked the floor plan of a home which had been placed on display at the Freeway Mobile Home Sales lot in Tucson; however, they could not completely inspect the mobile home before signing the purchase contract because it had not been completely set up, in that rugs were not laid, light fixtures were not up, the home was resting on jacks rather than being blocked and leveled and the doors were difficult to open. The trim and railing were on the floor and there was poor visibility due to bad lighting. They could, however, see the general floor plan and, hence, were able to obtain an idea of the size, room configuration and colors.

Many representations were made by the appellee, Harold Griffin and by his salesman. Among these were that the mobile home was made by a reputable manufacturer and by expert craftsmen of the highest quality material, and that a year's service and repair went with each home and that all service and repairs would be taken care of immediately and for one year without charge. The Sellingers were quoted a purchase price of $12,650.00, unfurnished, and this is what they paid. The Sellingers also purchased a lot for $4,218.88, on which to place the mobile home and, in addition, they added a patio, porch and air conditioning unit for $4,653.25; $335.86

was paid for registration, taxes and insurance.

After the mobile home was delivered and the Sellingers had moved in, they encountered these difficulties:

1. Seven of the eight doors were out of line with the door frames or had inadequate hardware.

2. There were plumbing leaks into storage cabinets and onto the floor carpeting.

3. There were certain electrical hazards, which it is unnecessary to detail.

4. The roof leaked.

5. Wall studs were missing.

6. Plywood was not attached to the studs.

7. The wall trim was not as represented.

8. The drapes were improperly shaped.

9. Cabinets and drawers were not sanded and did not fit properly.

10. The Sellingers paid $50.00 extra to put in a stove with a self-cleaning oven. Instead of a free-standing stove, as was in the demonstrator, a drop-in type stove was installed with unfinished sides. Since it was shorter in height than a free-standing stove, it was propped up on 2 x 4 blocks, and since it was wider than the free-standing stove, it was wedged into place.

All the foregoing were reported by complaints to appellee Freeway, who made two nominal service calls and thereafter no longer responded to the Sellingers' calls. When the Sellingers complained to the Tucson Better Business Bureau, Freeway made an additional call, and the Sellingers were then told that this was the last service call because of their complaint to the Better Business Bureau.

After the filing of this lawsuit, Freeway communicated with the Sellingers, stating that the mobile home was defective and would require factory rebuilding, and told

the Sellingers to contact the factory. It was established that the custom and practice in the mobile home industry regarding repairs was that the dealer makes the repairs; that if it is necessary to contact the factory, the dealer contacts the factory. The evidence was that the defective mobile home was worth only $7,500.00 as it stood, and other testimony was that it would take $2,000.00 to bring the home up to good condition. The Sellingers offered testimony that they suffered great aggravation and illness because of the condition of the home and the failure to comply with the purchase contract by properly remedying the defects.

Appellants brought their suit in four causes of action; first, for damages for breach of contract and failure to repair the mobile home; second, under Arizona's Consumer Fraud Act, A.R.S. § 44–1521 et seq., and Fraudulent Advertising Practices Act, § 44–1481, for deceptive practices; third, for damages for the negligent conduct of appellees; and fourth, for the negligent manufacture by Topaz Industries.

Count Two, predicated on the Arizona Consumer Fraud Act, was dismissed by the trial court for the reason that the Act did not provide a private right of action for the wrongful violation of its provisions. Judgment was entered in favor of appellants in the court below against Freeway Mobile Homes for breach of warranty in the sum of $500.00 and $190.00 for breach of implied warranty of fitness against Topaz Industries.

Appellants present two claims of error which we think are of a serious nature. They first urge that the Arizona Consumer Fraud Act and the Arizona's Fraudulent Advertising Practices Act create a private cause of action for deceptive practices and, second, that there was no evidence justifying the award of damages for only $690.00.

In 1967, by Article 7, A.R.S. §§ 44–1521 through 44–1534, the Legislature enacted what is known as the Consumer Fraud Act. Subsec. A of § 44–1522 thereof provides:

"The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice."

█ In interpreting statutes, a court will look to the intent of the Legislature. In re One 1965 Ford Mustang, 105 Ariz. 293, 463 P.2d 827 (1970); Employment Security Commission of Arizona v. Fish, 92 Ariz. 140, 375 P.2d 20 (1962). A court will consider the context of the statute, the language used, the subject matter, the effects and consequences, and the spirit and purpose of the law. Marquez v. Rapid Harvest Company, 89 Ariz. 62, 358 P.2d 168 (1960); State v. Stockton, 85 Ariz. 153, 333 P.2d 735 (1958).

The Consumer Fraud Act does not contain express language granting a private right of action. It provides by § 44–1524 that upon receipt of a complaint that a person has engaged in or is engaging in practices declared by the Act to be unlawful the Attorney General, when he believes it to be in the public interest, may make an investigation into any of such practices, and he may seek an injunction from the Superior Court prohibiting the continuation of such practices. By § 44–1528, the Attorney General may apply to the Superior Court for a receiver of the assets of a person who is engaged in unlawful practices if such person is about to conceal his assets or leave the State. Where a receiver has been appointed, a person who has suffered damages by reason of unlawful practices may participate with general creditors in the distribution of the assets. The Act, by § 44–1531 (since amended), provided that any person who wilfully and intentionally violated any

provision of the article was guilty of a misdemeanor.

■■ Insofar as the penal provision of the Act, in Arizona, by A.R.S. § 1–211(C), the rule of the common law that penal statutes shall be strictly construed has no application. Statutes shall be construed with the view to effect their object and promote justice. Moreover, statutes which are designed to redress existing grievances and introduce regulations conducive to the public good are remedial. Rookledge v. Garwood, 340 Mich. 444, 65 N.W.2d 785 (1954).

■ Although the Act does not specifically provide for a right of action against persons violating the provisions of the article, we believe inferentially such right of action is granted by § 44–1533. It provides:

"The provisions of this article shall not bar any claim against any person who has acquired any monies or property, real or personal, by means of any practice declared to be unlawful by the provisions of this article."

Clearly the section quoted contemplates that a person who has been damaged by the practices declared to be unlawful may exert a claim by reason of such acts. It has been held that similar language in a consumer fraud act is sufficient recognition that a cause of action has been created in favor of the consumer. Rice v. Snarlin, Inc., 131 Ill.App.2d 434, 266 N.E. 2d 183 (1970).

Our conclusion that a private right of action has been created is reinforced by a continuous line of decisions of the Supreme Court of the United States providing for civil actions by private persons based on the violation of penal statutes. In the latest case of Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), certain shipowners negligently caused their vessels to sink in inland waterways. The Supreme Court held under the Rivers and Harbors Act of 1899 that the United States Government had a private right of action for damages, although the remedies provided in the Act did not include damages for the removal of vessels sunk in inland waterways. The Court said:

"Our decisions have established, too, the general rule that the United States may sue to protect its interests. Cotton v. United States, 11 How. 229, 13 L.Ed. 675 (1851); United States v. San Jacinto Tin Co., 125 U.S. 273, 8 S.Ct. 850, 31 L.Ed. 747 (1888); Sanitary District of Chicago v. United States, supra. This rule is not necessarily inapplicable when the particular governmental interest sought to be protected is expressed in a statute carrying criminal penalties for its violation. United States v. Republic Steel Corp., supra. Our decisions in cases involving civil actions of private parties based on the violation of a penal statute so indicate. Texas & Pacific R. Co. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423, (1964). In those cases we concluded that criminal liability was inadequate to ensure the full effectiveness of the statute which Congress had intended. Because the interest of the plaintiffs in those cases fell within the class that the statute was intended to protect, and because the harm that had occurred was of the type that the statute was intended to forestall, we held that civil actions were proper." 389 U.S. 191, 201–202, 88 S.Ct. 379, 386, 19 L.Ed.2d 407, 415–416.

There is today a trend away from the doctrine of caveat emptor toward caveat venditor, see Lovett, Private Actions for Deceptive Trade Practices, 23 Adm.L.R. 271. Without effective private remedies the widespread economic losses that result from deceptive trade practices remain uncompensable and a private remedy is highly desirable in order to control fraud in the marketplace.

Appellants' second serious ground for appeal is that the trial court's award of damages for breach of warranties in the

sum of $690.00 was inadequate. They also urge that they were entitled to consequential damages for the alleged emotional distress and physical upset that they suffered in connection with appellees' breach of warranty on the mobile home.

A.R.S. § 44–2393(B) prescribes the measure of damages for breach of warranty:

"B. The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

And subsec. (C) thereof states:

"C. In a proper case any incidental and consequential damages under § 44–2394 may also be recovered. Added Laws 1967, Ch. 3, § 5."

A.R.S. § 44–2394(B) provides:

"B. Consequential damages resulting from the seller's breach include:

1. Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

2. Injury to person or property proximately resulting from any breach of warranty. Added Laws 1967, Ch. 3, § 5."

■ As stated, the price paid by appellants for the mobile home was $12,650.00. Allen O'Brien, general sales manager for a Tucson mobile home company, with twelve years of experience, was called as a witness by appellants. He testified that the value of their mobile home in September 1970 at the time of purchase would have been $7,500.00 considering the defects that he observed. Appellants also called David Poore, a civil engineer with the physical resources department of the University of Arizona and a licensed contractor. He testified that it would cost $2,000.00 to repair the defects which he observed in the mobile home.

Appellees did not offer any testimony establishing a different figure as to diminished value or relating to the cost of repairs. Yet, as pointed out, the trial court only assessed $500.00 damages against the dealer and $190.00 damages against the manufacturer. Neither counsel nor have we been able to discover the basis for the trial court's award. We do not think the record reasonably supports the award of $690.00, and hold that the damages assessed are inadequate.

■■ So far as the appellants' contention that they were entitled to consequential damages, this is a matter which we think under the state of the record the trial court could have properly decided was not warranted. However, since we feel it is necessary to reverse the judgment of the Superior Court and direct that appellants be given a new trial, we point out insofar as appellants' second claim for relief that punitive damages may be properly awarded by the trier of fact for deceptive practices. Punitive damages should be awarded where the conduct of the wrongdoer is wanton, reckless or shows spite or ill-will, Lufty v. R. D. Roper & Sons Motor Co., 57 Ariz. 495, 115 P.2d 161 (1941), or where there is a reckless indifference to the interests of others, McNelis v. Bruce, 90 Ariz. 261, 367 P.2d 625 (1961).

■■ Appellants are not entitled to attorney's fees. Attorney's fees may only be awarded where an agreement specifically provides for them or when specifically authorized by statute. In re Estate of McConnell, 101 Ariz. 538, 421 P.2d 895 (1966).

The judgment of the trial court is reversed with directions to grant appellants a new trial and reinstate the appellants' second claim for relief and for such further proceeding as is consistent with the views expressed herein.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.