Harrison, Rollman & Gabroy, P.C. by John Gabroy and Sharmila Roy, Tucson, for plaintiffs/appellants.

Stephen D. Neely, Pima Co. Atty. by JoAnn Sheperd, Tucson, for defendants/appellees.

778 P.2d 1342

**Paul GUIBAULT and Armida Guibault, husband and wife, Plaintiffs/Appellants,**

v.

**PIMA COUNTY, a body politic; Fran Monachino, a single woman, Defendants/Appellees.**

No. 2 CA–CV 88–0275.

Court of Appeals of Arizona, Division 2, Department B.

April 11, 1989.

Review Denied Sept. 19, 1989.

## OPINION

FERNANDEZ, Judge.

This appeal was taken from the trial court's order granting the appellees' motion to dismiss. We agree that appellants have no private right of action and affirm.

On August 7, 1982, appellant Armida Guibault was admitted to Tucson Medical Center (TMC) for emergency treatment of a subarachnoid hemorrhage resulting from the rupture of an aneurysm. TMC submitted an application for hospital and/or medical care for Guibault to the Pima County Medical Assistance Program. Appellant Paul Guibault attended an eligibility interview and signed the application for medical assistance on August 20. On October 7, 1982, the application was denied by Fran Monachino, then Pima County Medical Assistance Eligibility Administrator, on the ground that the Guibaults' assets ex-

ceeded the permissible limit by $204. This determination was affirmed on administrative review on February 8, 1983.

TMC subsequently filed suit against Pima County to recover the hospital charges incurred by Guibault from August 7, 1982, through December 16, 1982, as well as the cost of subsequent outpatient physical therapy. In March 1985 TMC obtained a judgment in its favor based on the trial court's finding that Guibault was eligible for county medical assistance at the time she was hospitalized. The Guibaults were not parties to that action.

The complaint in this case was filed in March 1986 by the Guibaults against Pima County and Monachino. The complaint seeks damages for injuries resulting from the wrongful denial of Guibault's application for medical assistance and a declaration that the Guibaults "are immediately eligible for indigent health assistance pursuant to A.R.S. Sections 11–291 et seq...." [1] The complaint alleges that Guibault suffered permanent damages as a result of the denial of eligibility.

In May 1986, after the complaint had been filed, Guibault filed a second application for indigent health care services. This application was denied as to coverage under the Arizona Health Care Cost Containment System (AHCCCS), A.R.S. §§ 36–2901 through 36–2919, on July 13, 1986, because of Guibault's failure to provide certain documentation required by AHCCCS. County medical assistance pursuant to A.R.S. §§ 11–291 through 11–301 was denied when the county learned that Guibault, who was divorced in June 1986, had received a cash award of $5,500 under the decree of dissolution which resulted in her exceeding the asset limitation for eligibility by $500. Guibault appealed the county's denial which was affirmed when she failed to appear at the scheduled appeal hearing. A third application filed in February 1987 was denied for failure to complete a required interview. Guibault did not appeal that denial.

Appellees filed a motion to dismiss, arguing that the claim was barred by the statute of limitations and the doctrine of collateral estoppel, that the complaint failed to state a claim upon which relief could be granted, and that the Guibaults had failed to exhaust their administrative remedies. After a hearing, the trial court granted the parties leave to file memoranda "addressing the existence of Mrs. Guibault's cause of action which [counsel] characterizes as tort[i]ous breach of statute [sic] obligation that is the basis for the Plaintiff's cause of action in this case which she contends allows her to seek compensation." Following the submission of supplemental memoranda, the trial court ruled as follows:

THE COURT FINDS that the Plaintiffs have failed to state a claim upon which relief may be granted and thus, this action should be dismissed.

Plaintiffs in their Memoranda filed in connection with the Motion to Dismiss characterizes [sic] their cause of action as a tortious breach of statutory duty, citing A.R.S. Section 11–291, *et seq.* Arizona Health Care Cost Containment System (AHCCCS) is governed by A.R.S. Section 36–2901, *et seq.* and A.R.S. 11–291, *et seq.* as it applies to the counties. Pursuant to these statutes, rules and regulations for the administration of the AHCCCS program have been enacted. The statutes and rules provide a comprehensive administrative scheme for the administration of AHCCCS and determination of claims under the AHCCCS program and includes [sic] an appeals process. In *Transamerica Financial Corp. v. Superior Court,* 155 Ariz. 327, 746 P.2d 497, 1 CA–SA 018 (file[d] July 9, [ (App.]1987) the Court of Appeals ruled on whether a private cause of action exists under the Arizona Consumer Loan Act and therein set forth the factors to be considered in determining whether a private cause of action exists for violation of a statute.

---

1. Because that claim appears not to have been pursued below and is not argued on appeal, we do not address it.

Considering the factors as set forth in *Transamerica Financial Corp.*,

THE COURT FINDS that there is no private cause of action for violation of the AHCCCS statutes and no tort claim for violation of any statutory duty of the county arising thereunder.

The trial court expressly refused to rule on the statute of limitations issue and did not address the other grounds raised by appellees.

The case relied upon by the trial court, *Transamerica Financial Corp. v. Superior Court*, 155 Ariz. 327, 746 P.2d 497 (App. 1987), presented the issue of whether an implied private right of action existed under Arizona's Consumer Loan Act, A.R.S. §§ 6–601 through 6–640. In a lengthy analysis which ultimately adopted the federal test for determining the existence of a private right of action as set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), Division One of this court held that no private right of action arose under the act and that the petitioners were limited to the administrative remedies set forth in the act.

As the Guibaults point out, the Arizona Supreme Court vacated the decision of Division One in *Transamerica* subsequent to the trial court's ruling in this case. *Transamerica Financial Corp. v. Superior Court*, 158 Ariz. 115, 761 P.2d 1019 (1988). The supreme court expressly rejected "the federal standard for determining legislative intent in creating or denying a private right of action arising from a statute providing civil penalties for violation of the statute...." 158 Ariz. at 117 n. 1, 761 P.2d at 1021 n. 1. Instead, the court reiterated the standard previously set forth in *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974), that interpretation of a statute requires "consideration of the context of the statutes, the language used, the subject matter, the effects and consequences, and the spirit and purpose of the law." 158 Ariz. at 116, 761 P.2d at 1020. In *Sellinger*, the supreme court found that Arizona's Consumer Fraud Act contains an implied private right of action in its cumulative remedies provi-

sion. The Consumer Loan Act does not contain a similar provision. Nevertheless, the court held that the lengthy history of the act, the supreme court's early recognition of an implied private right of action, and the legislature's numerous amendments of the act without expressly prohibiting a private right of action all indicated "a legislative intent to preserve the private right judicially recognized by the court." 158 Ariz. at 117, 761 P.2d at 1021.

The statutes under consideration in this case are materially different from the Consumer Loan Act. The latter was enacted for the purpose of regulating commercial transactions between lending institutions and consumers, whereas the purpose and sole object of the former was to impose on the state's counties a new obligation to provide hospital and medical care for the indigent. Although lenders and borrowers have always had access to the courts to enforce their respective rights and obligations under contract, no similar right has accrued to the indigent because, until the passage of these statutes, the counties had no obligation to provide indigents with medical care. See *Allen v. Graham*, 8 Ariz.App. 336, 446 P.2d 240 (1968). Furthermore, "when the state creates rights in individuals against itself, it is not bound to provide a remedy in the courts and may withhold all remedy or it may provide an administrative remedy and make it exclusive, however mistaken its exercise." 8 Ariz.App. at 339, 446 P.2d at 243. Thus, the question we must consider is not whether the legislature intended to eliminate a "private right judicially recognized by the court," *Transamerica*, supra, 158 Ariz. at 117, 761 P.2d at 1021, but whether, in imposing this new obligation on the counties, it intended to provide *any* remedy to those who may be injured by the county's violation of its obligation under the statutes, be it administrative review, private right of action or otherwise.

We note initially that prior to 1984, the statutes at issue contained no specific provision for either administrative or judicial review of eligibility determinations, much less any provision for other civil remedies. See 1984 Ariz.Sess. Laws, ch. 372, § 5

(amending § 11–297(E) to provide for an administrative appeal of eligibility determinations to the director of AHCCCS). However, it is undisputed that at the time of the Guibaults' original application, the county had established a procedure for administrative review of eligibility determinations and that the Guibaults' case was subject to this administrative review. Such determinations have previously been subject to judicial review. See *McMullen v. Hargis*, 128 Ariz. 142, 624 P.2d 339 (App.1980).

Furthermore, although § 11–297 has been amended numerous times since its adoption, the legislature has never chosen to provide expressly for administrative or judicial review of county determinations. The 1984 amendment to § 11–297(E) provided only for administrative review of AHCCCS eligibility determinations. In our view, this legislative inaction with respect to county assistance indicates a tacit approval of existing county administrative procedures, subject ultimately to judicial review, as the sole remedy available to persons denied eligibility for county assistance. Thus, we hold that the trial court was correct in its conclusion that the Guibaults have no private right of action apart from those remedies.

In so holding, we are mindful of the long line of cases following the supreme court's abrogation of the doctrine of sovereign immunity in *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963), which have permitted suits against the state and its subdivisions for damages resulting from tortious conduct. See, e.g., *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 706 P.2d 364 (1985); *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982); *Bischofshausen v. Pinal–Gila Counties Air Quality Control District*, 138 Ariz. 109, 673 P.2d 307 (App.1983). As the supreme court stated in *Ryan*, "the state and its agents will be subject to the same tort law as private citizens." 134 Ariz. at 311, 656 P.2d at 600.

The first inquiry in these cases has concerned the existence of a duty on the part of the state. As the supreme court stated in *Markowitz*, "The question is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." 146 Ariz. at 356, 706 P.2d at 368. In *Ryan*, the court noted that "the parameters of duty owed by the state will ordinarily be coextensive with those owed by others." 134 Ariz. at 310, 656 P.2d at 599.

In most cases, the courts have turned to common law principles to identify the duty owed and to define its parameters. *Markowitz; Ryan; Grimm v. Arizona Board of Pardons & Paroles*, 115 Ariz. 260, 564 P.2d 1227 (1977). However, in the absence of a common law analogy,[2] the requisite duty has also been found in the context of statutory regulatory schemes designed to protect the public, or a certain subclass thereof, from harm resulting from the actions of others. See, e.g., *State v. Superior Court*, 123 Ariz. 324, 599 P.2d 777 (1979), overruled on other grounds, *State v. Gunnison*, 127 Ariz. 110, 618 P.2d 604 (1980) (Arizona Corporation Commission's statutory power to regulate thrift companies created duty to protect thrift company depositors); *Bischofshausen v. Pinal–Gila Counties Air Quality Control District*, supra (implicit holding that Control District's statutory duty to control and regulate activities of asbestos mine and mill operators also encompasses duty to those who may be injured by creation of asbestos hazards); *Brown v. Syson*, 135 Ariz. 567, 663 P.2d 251 (App.1983) (implicit holding that city building inspector's responsibility to ensure that residence is constructed in conformity with building code creates duty to residence owners).

We have found no cases, and have been cited none, that address the duty of the state or its subdivisions under statutes creating an entitlement program in the context of an asserted private right of action

2. The duty of the state or its subdivisions with respect to streets and highways appears to be sui generis. In *Beach v. City of Phoenix*, 136 Ariz. 601, 667 P.2d 1316 (1983), the supreme court rejected the lower court's analogy to common law duties of a landowner, holding that streets are held in trust by a municipality for the public, and that its duty derives therefrom.

**450**

for damages. The parties agree, and our cases have held, that the counties have a mandatory duty to provide medical care for the indigent sick. *Hernandez v. County of Yuma,* 91 Ariz. 35, 369 P.2d 271 (1962); *Industrial Commission v. Navajo County,* 64 Ariz. 172, 167 P.2d 113 (1946). See also *Walter O. Boswell Memorial Hospital, Inc. v. Yavapai County,* 148 Ariz. 385, 386, 714 P.2d 878, 879 (App.1986) ("each county retains a residual responsibility to provide health care to any indigent county resident who is not enrolled in AHCCCS"). They disagree, however, as to the scope of that duty or, perhaps more accurately, as to the measure of damages for breach of that duty. The county argues that its only obligation is to pay for medical care. The Guibaults contend that, in light of *Stone* and its progeny, the county is liable for any damages resulting from a breach of its statutory duty.

As discussed above, when the state creates rights against itself that were unknown at common law, it is free to define not only the extent of the obligation undertaken but also the remedy, if any, for its enforcement. *Allen v. Graham, supra.* In this case, we believe that the legislature has created a right in the indigent sick against the county to medical care, or payment therefor, and that this right, and the county's corresponding duty, extends no further. It follows that, when an indigent is denied eligibility for such care, his or her only remedy is to recover payment for benefits wrongfully denied. Nothing in the statutes evidences an intent to create or permit a separate cause of action for damages proximately caused by such a wrongful denial of benefits. We acknowledge that this remedy may not afford complete relief to those injured by a wrongful denial of eligibility. However, such a choice is within the legislature's prerogatives. Cf. *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). It is commendable that the legislature has enacted a program under which the counties are required to provide medical care to the indigent. However, we are cognizant of the burden that this and similar entitlement programs place upon local government. We believe, however, that the absence of express provision for additional civil remedies in the statutes is strong evidence of legislative intent that the only remedy for errors in eligibility determinations be recovery of benefits wrongfully withheld. Accordingly, we hold that the trial court properly granted appellees' motion to dismiss for failure to state a claim upon which relief could be granted.

LACAGNINA, C.J., and HATHAWAY, J., concur.