IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————————

**ANDREW J. HENDERSON,**
*Petitioner,*

*v.*

**THE HONORABLE FRANK W. MOSKOWITZ, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,**
*Respondent Judge,*

**ROB SULLIVAN,**
*Real Party In Interest.*

———————————

No. CV-24-0215-PR
Filed November 28, 2025

———————————

Appeal from the Superior Court in Maricopa County
The Honorable Frank W. Moskowitz, Judge
No.  CV2023-010668
**AFFIRMED AND REMANDED**

Order of the Court of Appeals, Division One
1 CA-SA 24-0163
Filed August 7, 2024

———————————

COUNSEL:

Dennis I. Wilenchik (argued), Brian R. Gifford, Wilenchik & Bartness, P.C., Phoenix, Attorneys for Andrew J. Henderson

Amy Wilkins Hoffman (argued), Frost LLP, Phoenix, Attorneys for Rob Sullivan

———————————

JUSTICE BOLICK authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ, and JUSTICES BEENE, MONTGOMERY, KING, and CRUZ joined.

———————

JUSTICE BOLICK, Opinion of the Court:

¶1        We must decide whether a non-signatory may enforce a forum selection clause against a signatory to a contract under the "closely related party doctrine."  We decline to adopt that doctrine with regard to forum selection clauses, holding that the provisions of the contract control and that other established doctrines providing non-signatories with benefits under a contract are ample.

## BACKGROUND

¶2        Nomad Capitalist USA, LLC ("Nomad") offers consulting services to people who are interested in becoming "nomad capitalists"—that is, relocating to foreign jurisdictions, obtaining foreign citizenship, and planning offshore tax strategies.

¶3        Robert Sullivan contracted with Nomad to "internationalize [his] finances, freedom, and lifestyle."  Sullivan paid Nomad approximately $52,500 for consulting services.  The contract is governed by Arizona law and contains a forum selection clause that reads: "Each party further consents to exclusive jurisdiction and venue in the jurisdiction of Hong Kong, S.A.R. China."   Henderson—founder and manager of Nomad—signed the contract on Nomad's behalf but not in his individual capacity.  The contract was based on Nomad's standard form contract, which Nomad and Henderson drafted and tailored for this transaction.

¶4        After the relationship between Sullivan and Nomad went sideways, Sullivan sued Nomad and Henderson in Arizona for breach of contract, unjust enrichment, and consumer fraud under Arizona's Consumer Fraud Act (the "CFA").  *See* A.R.S. §§ 44-1521–1534.  Nomad and Henderson both filed motions to dismiss based on the contract's forum selection clause.

¶5        The trial court granted Nomad's motion to dismiss, finding the forum selection clause applies to Sullivan's claims against Nomad.

However, the court denied Henderson's motion to dismiss, finding the forum selection clause does not apply to Sullivan's consumer fraud claim against Henderson because Henderson was a non-signatory to the contract. The court explained that "there may be case law supporting the extension of an arbitration agreement to a non-signatory to the agreement, [but] there is no Arizona case law extending that principal (sic) of law to a forum selection clause." The trial court also dismissed Sullivan's contract claims against Henderson, leaving consumer fraud under Arizona's CFA as the sole cause of action against Henderson.

¶6          Henderson filed a petition for special action in the court of appeals seeking to dismiss the consumer fraud claim against him, but the court declined jurisdiction. Henderson then petitioned this Court for review, arguing that the forum selection clause applies to Sullivan's consumer fraud claim under the "closely related party doctrine" and "alternative estoppel theory." Henderson concedes he is not a party to the contract, but argues he is a "closely related party" so he can enforce the forum selection clause against Sullivan. Henderson contends the closely related party doctrine is applicable because the contract was "intended to benefit [him] and shield him from personal liability or involvement in litigation." Additionally, Henderson argues that "all the allegedly fraudulent statements and/or instances of unjust enrichment were intimately bound up with the [contract]."

¶7          Sullivan counters that applying the closely related party doctrine rewrites the contract's unambiguous language. Sullivan contends that if Nomad wanted Henderson to be bound by the forum selection clause, it could have expressly included him—as it did elsewhere when drafting the agreement, which Nomad and Henderson controlled. Notably, two contract provisions—the indemnification provision and social media provision—do exactly that.[1] By contrast, the forum selection clause is restricted to "[e]ach party" to the contract. Sullivan further argues that

[1] The contract's indemnification provision reads: "You agree to indemnify, defend, and hold harmless Nomad Capitalist, its employees, officers, and contractors, or other agent or representative, including Andrew Henderson personally." The contract's social media provision reads: "In an effort to maintain a professional boundary in the serving of your case, our staff members (including Andrew Henderson) generally do not accept personal social media requests."

reliance on the closely related party doctrine and alternative estoppel theory is unnecessary because Arizona has other equitable doctrines—like third-party beneficiary or alter ego doctrine—that allow a non-signatory to enforce or be bound by the terms of an agreement.

**¶8**         We accepted review to decide whether we should adopt the closely related party doctrine or alternative estoppel theory to allow a non-signatory to enforce a contract's forum selection clause, which presents a matter of statewide importance.[2]   We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶9**         As the construction of a contract and the existence of contract defenses are questions of law, we decide them de novo.  *See Sw. Non-Profit Hous. Corp. v. Nowak*, 234 Ariz. 387, 393 ¶ 19 (2014) (stating that interpretation of a contract is a question of law reviewed de novo); *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 159 (1993) (noting contract construction and related defenses are questions of law).

**¶10**         Given our strong protections and common law tradition of freedom of contract, we generally strive to enforce agreements between parties, see *Zambrano v. M. & R.C. II, Ltd.*, 254 Ariz. 53, 58 ¶ 10 (2022), and we interpret contract language in accord with its "plain and ordinary meaning," see *Teufel v. Am. Fam. Mut. Ins. Co.*, 244 Ariz. 383, 385 ¶ 10 (2018). Applying ordinary contract principles, Sullivan would not be bound by the forum selection clause concerning his suit against Henderson.  Absent some exception to the usual rule, a non-signatory may not enforce contract provisions.[3]  *See Lofts at Fillmore Condo. Ass'n v. Reliance Com. Constr., Inc.*, 218 Ariz. 574, 575 ¶ 5 (2008); *JTF Aviation Holdings Inc. v. CliftonLarsenAllen*

---

[2] The parties appear to agree that the closely related party doctrine and alternative estoppel theory are the same doctrine with different names, the first applies in the forum selection clause context and the second in the arbitration clause context.  For that reason, we consider only the closely related party doctrine.

[3] At oral argument, Henderson's counsel contended that he is a third-party beneficiary of the contract, which therefore entitled him to enforce the forum selection provision.  We did not grant review on that question, and the argument was not developed before us.

*LLP*, 249 Ariz. 510, 513–14 ¶ 18 (2020) (listing six common law exceptions). Although Henderson was not a party to the contract, as noted above, he was included within specific contract provisions, which suggests that his omission from others (including the forum selection clause) was intentional. *See, e.g.*, *Hancock v. O'Neil*, 253 Ariz. 509, 513 ¶ 15 (2022) (applying the *expressio unius est exclusio alterius* canon to infer that an omission reflects deliberate exclusion); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107–11 (2012) (explaining that explicit inclusion of one matter implies exclusion of another under the "negative-implication" canon). The parties could have expressly enshrouded Henderson within the forum selection clause with a few strokes of the keyboard but did not. Claiming protection within that provision at this point is therefore a tall order.

¶11 Henderson seeks refuge in the closely related party doctrine, which some courts have recognized to "permit non-signatories to an agreement to be bound by, and to enforce, forum selection clauses where, under the circumstances, the non-signatories enjoyed a sufficiently close nexus to the dispute or to another signatory such that it was foreseeable that they would be bound." *Firexo, Inc. v. Firexo Group Ltd.*, 99 F.4th 304, 312 (6th Cir. 2024) (*quoting Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 439 (5th Cir. 2022)). Henderson commends the third-party doctrine as a "unique, new tool" to interpret contacts—and that it may be. But in applying common law, this Court typically constrains itself to public policy as expressed in statute or common law principles. *Cf. 1800 Ocotillo, LLC v. WLB Grp., Inc.*, 219 Ariz. 200, 202 ¶ 8 (2008) (declining to adopt a new contract rule and emphasizing courts apply existing common law and statutory principles); *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563 ¶ 2 (2018) (noting that Arizona courts generally decline to create new common law duties absent legislative guidance).

¶12 Arizona has not previously adopted the closely related party doctrine, and indeed this Court has admonished that "the corporate status will not be lightly disregarded." *JTF Aviation*, 249 Ariz. at 514 ¶ 20 (internal quotation marks omitted) (quoting *Chapman v. Field*, 124 Ariz. 100, 102 (1979)). This Court has recognized instances in which a non-signatory may enforce contract terms, such as "incorporation by reference, assumption, agency, veil-piercing or alter ego, equitable estoppel, and third-party beneficiary." *JTF Aviation,* 249 Ariz. at 513–14 ¶ 18 (citation omitted); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (citation and

quotations omitted) (explaining that "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel"). But we have declined to adopt the closely related party doctrine in the context of a limitations period for commencing a suit under a contract. *JTF Aviation*, 249 Ariz. at 514–15 ¶ 23. We also noted that our court of appeals rejected the closely related party doctrine in the forum selection clause context based on "the general rule that only parties to a contract are bound by its terms." *Id.* at 513 ¶ 17 (quoting *Sierra Tucson, Inc. v. Bergin*, 239 Ariz. 507, 511 ¶ 16 (App. 2016)).

**¶13** We recognize that the court of appeals has held that when a party to a contract sues a non-signatory individual defendant under an alter ego theory, "that defendant may demand arbitration to the same extent the corporate entities could do so." *Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props, Inc. v. Robson*, 231 Ariz. 287, 296 ¶ 36 (App. 2012). However, that case is distinguishable in at least two material ways. First, by invoking an alter ego theory, the plaintiff essentially invited the defendant to step into the shoes of the contracting parties. Here, by contrast, Sullivan is suing Henderson for his individual actions, solely under a statute's provisions rather than a contract. Second, Arizona has a strong policy interest in enforcing arbitration provisions, *North Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, 305 ¶ 16 (2004); *Hamblen v. Hatch*, 242 Ariz. 483, 491 ¶ 34 (2017) (referring to "the strong public policy favoring arbitration" as Arizona's preferred method of dispute resolution); whereas, as we will discuss in greater detail later, the state also has a strong interest in enforcing its consumer fraud statutes. Those interests cut in different directions in the two contexts presented.

**¶14** Ultimately, we decline to add another exception by which non-signatories may enforce contract provisions by adopting the closely related party doctrine. To the contrary, under Arizona law, third-party beneficiaries must be explicitly named in the contract to enforce the contract's provisions. *See Norton v. First Fed. Sav.*, 128 Ariz. 176, 178 (1981) (quoting *Irwin v. Murphey*, 81 Ariz. 148, 154 (1956)); *Sherman v. First Am. Title Ins. Co.*, 201 Ariz. 564, 567 ¶ 6 (App. 2002). Adopting the doctrine would thus circumvent that principle. Here, Henderson was not listed as a beneficiary of the forum selection clause, and he could have been.

¶15 As the U.S. Court of Appeals for the Fifth Circuit has observed, federal courts that have adopted the doctrine have applied a number of factors to determine whether it applies in a particular case: "common ownership, involvement in the agreement's negotiations, signatory status of the party opposing the forum selection clause, the type of claims and allegations at issue, control by secret principals, the posture of the case, direct benefits received, and awareness of the agreement and its relevant terms." *Franlink*, 50 F.4th at 440. Added to these factors is the consideration of whether it is foreseeable that the signatory party will be bound, *id.* at 441, a standard that presumably would be difficult to meet given the multiplicity and uncertainty of the applicable factors. No wonder the Fifth Circuit remarked that "there is good reason to be dubious" of the closely related party doctrine, *id.*, and that another federal court found that the doctrine is "so vague as to be unworkable." *Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 556 (N.D. Tex. 2009).

¶16 The Sixth Circuit recently rejected the doctrine, characterizing it as "a judicial concoction without underlying authority or justification. It appeared *ipse dixit* and continues to exist primarily because no court has rejected it." *Firexo*, 99 F.4th at 326.

¶17 Henderson argues that it is unfair and inefficient to litigate the same matter in multiple courts at the same time when the contract contains a forum selection clause and that the closely related party doctrine is necessary to prevent evasion of inconvenient forum selection clauses. Again, Henderson could have avoided the issue by having the contract include him within the forum selection clause, just as the parties did with other contract provisions that expressly encompass him. Henderson makes equitable arguments against Sullivan, but allowing Henderson to essentially clothe himself in contract benefits (including provisions that mention him but also those that don't) to escape otherwise applicable liabilities to signatories would be inequitable.

¶18 Regardless, Henderson has a number of procedural tools at his disposal to rid himself of unmeritorious claims in state court. *See* Ariz. R. Civ. P. 9(b) (special pleading rules for fraud), 12(b)(6) (motion to dismiss), 11 (sanctions), 56 (summary judgment). Indeed, the trial court has already dismissed contract claims against the company.

¶**19** This leaves the statutory consumer fraud claims. *See* Arizona Consumer Fraud Act, A.R.S. §§ 44-1521–1534. Among other things, the CFA makes unlawful false promises or representations in connection with the advertising or sale of merchandise, see § 44-1522(A), which is the gravamen of Sullivan's consumer fraud claim against Henderson. *See* § 44-1521(5) (defining "merchandise" to include services); *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 576 (1974) (recognizing a private right of action to enforce the Act). We decline the invitation to adopt the closely related party doctrine to shield a non-signatory against a statutory claim independent of the contract. *See Morris v. Achen Constr. Co., Inc.*, 155 Ariz. 512, 514 (1987) ("The duty not to commit fraud is obviously not created by a contractual relationship and exists, as here, even when there is no contractual relationship between the parties at all.").[4] Arizona has a strong interest in enforcement of its consumer fraud laws. *See State ex rel. Woods v. Sgrillo*, 176 Ariz. 148, 149 (App. 1993) (noting Arizona's strong interest in enforcing consumer protection laws); *State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*, 128 Ariz. 483, 486 (App. 1981) ("In light of the purpose of the Consumer Fraud Act, which is to protect the public from deceptive acts . . . ."). Henderson argues that this claim is "superfluous." That is hardly a determination we can make at this point. If Henderson is correct, he may surely seek dismissal and other appropriate relief in the trial court, leaving any remaining contract claims against the company to be litigated in Hong Kong.

¶**20** For the foregoing reasons, we decline to enforce the forum selection clause on behalf of Henderson, a non-signatory to the contract.

**CONCLUSION**

¶**21** We affirm the trial court's ruling and remand for further proceedings.

---

[4] In *Bennett v. Appaloosa Horse Club*, the court of appeals held that a fraud claim could not be litigated apart from a contract claim subject to a forum clause where the fraud claim arose from the same alleged contract violation. 201 Ariz. 372, 377 ¶ 24 (App. 2001). Although that is a question that the trial court can consider, here it appears the alleged fraud occurred prior to the contract formation; and, of course, it is a claim against a non-signatory.